UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NURSERY DECALS AND MORE, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2606-B |
| | § | |
| NEAT PRINT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Neat Print, Inc.'s Motion to Dismiss or in the Alternative,
Motion to Abate (Doc. 8). For the reasons that follow, the Court **DENIES** the motion in full.

### I.

### BACKGROUND[1]

This is a trademark case. Plaintiff Nursery Decals is a Texas-based company that designs,
markets, and sells wall decals, as well as clothing and accessories. Doc. 1, Compl., ¶ 7. Nursery Decals
uses online marketplaces such as Amazon and Etsy to sell approximately $3,500,000 in goods
annually. *Id.* The sayings it uses on its clothing do not identify Nursery Decals, and "are purely
informational and/or ornamental material displayed across the front of a t-shirt or other clothing."
*Id.* "Defendant Neat Print is a Florida-based retailer of clothing, specifically t-shirts . . . ." *Id.* ¶ 8.
Neat Print's clothing bears generic slogans and sayings, such as "Papa, the Man, the Myth, the
Legend," "thankful," and "having a weird mom builds character." *Id.* Neat Print also uses online

---

[1]All facts are taken from Plaintiff Nursery Decals's complaint. *See* Doc. 1.

platforms such as Amazon and Etsy. *Id.*

Nursery Decals alleges that Neat Print's business involves "applying for and/or obtaining invalid trademark registration of generic slogans and popular sayings," and then submitting "take down notices" on marketing platforms "on the basis of purported trademark infringement." *Id.* ¶ 21. Nursery Decals believes that "[t]he intent of such actions is to shut down competition and obtain a competitive edge over other T-shirt retailers . . . ." *Id.*

On July 8, 2014, Neat Print filed an application for trademark registration with the United States Patent and Trademark Office (USPTO) for the "BE NICE TO ME, MY WIFE IS PREGNANT" mark (Registration No. 4,746,598) for use on clothing (hereinafter the "598 Mark"). *Id.* ¶ 9. Nursery Decals explains that although Neat Print warranted to the USPTO that no one had the right to use this mark such that use of the mark would not result in confusion, mistake, or deception, others had been using the mark before July 8, 2014 (hereinafter the "prior use" allegation). *Id.* Nursery Decals also alleges that the sample of the mark Neat Print submitted in its application was not an accurate depiction of how the mark was to be used on Neat Print's clothing (hereinafter the "false sample" allegation). *Id.* ¶ 11.

Also on July 8, 2014, Neat Print filed an application with the USPTO for registration of the "THE MAN BEHIND THE BUMP" mark (Registration No. 4,746,597) for use on clothing (hereinafter the "597 Mark"), and the "YOU CAN'T SCARE ME" mark (Registration No. 5,256,615) for use on clothing (hereinafter the "615 Mark"). *Id.* ¶¶ 12, 15. Nursery Decals repeats its prior use and false sample allegations with respect to the 597 and 615 marks. *See id.* at ¶¶ 12–14, 15–17.

Registrations for the 597 and 598 marks were issued on June 2, 2015, while registration for

the 615 mark was issued on August 1, 2017. *Id.* ¶¶ 12, 15.

On July 16, 2014, Neat Print filed an application with the USPTO for federal trademark registration for the "WORLD'S OKAYEST" mark (Registration No. 5,076,010) for use on clothing (hereinafter the "010 Mark"). *Id.* ¶ 18. Nursery Decals repeats its prior use and false sample allegations with respect to the 010 mark. *Id.* ¶¶ 18–20. Nursery Decals does not indicate when registration for this mark was issued.

On May 9, 2018, "just prior to Father's Day," Etsy notified Nursery Decals that Neat Print had filed a complaint with Etsy, based on Nursery Decals's purported trademark infringement in listing t-shirts with the phrases "Be Nice to Me My Wife is Pregnant" and "Man Behind the Bump." *Id.* ¶ 24. Etsy's notice was a "final warning" to Nursery Decals, which meant that the next complaint would result in Nursery Decals being banned from listing their products on Etsy. *Id.* Nursery Decals alleges, then, that it "had no choice but to remove from Etsy all listings for t-shirts that include any phrases registered by [Neat Print] as a purported trademark . . . ." *Id.* This resulted in "a significant loss in sales," including those on Father's Day, for Nursery Decals. *Id.* Nursery Decals, in attempt to avoid any similar problems with Amazon, pulled from Amazon its t-shirts that read "Be Nice to Me, My Wife is Pregnant," "World's Okayest," "Man Behind the Bump," and "You Don't Scare Me," which resulted in thousands of dollars in lost sales. *Id.* ¶ 25.

Based on these allegations, Nursery Decals brings eleven causes of action: (1) Declaratory Judgment of Non-Infringement (35 U.S.C. § 271, 15 U.S.C. § 1114); (2) Declaratory Judgment of Lack of Secondary Meaning; (3) Declaratory Judgment of Genericness; (4) Declaratory Judgment of Invalid Trademark Registration; (5) Declaratory Judgment of Fraud on the USPTO; (6) Cancellation of the 598 Mark; (7) Cancellation of the 597 Mark; (8) Cancellation of the 010 Mark;

(9) Cancellation of the 615 Mark; (10) Tortious Interference with Existing Business Relationship under Texas law; and (11) Tortious Interference with Prospective Business Relationship under Texas law. Doc. 1, Compl., 12–20. Nursery Decals also seeks to preliminarily and permanently enjoin Neat Print from engaging in certain actions, but did not file a formal preliminary injunction motion. *Id.* at 20–21.

Neat Print then filed a Motion to Dismiss or in the Alternative Abate, alleging a lack of both personal jurisdiction and an independent cause of action to support subject matter jurisdiction, improper venue, and failure to state a claim. *See* Doc. 8, Def.'s Mot., 1–2. All briefing has been filed on this motion, and the motion is ripe for review.

## II.

## LEGAL STANDARD

A.    *Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows for the dismissal of an action in which the court lacks personal jurisdiction over the defendant. A federal court may assert jurisdiction over a nonresident defendant in a diversity suit if the state's long-arm statute applies and due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). Texas courts have interpreted the Texas long-arm statute as "extending to the limits of due process." *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir. 1990). Accordingly, to determine whether it may assert jurisdiction under the Texas long-arm statute, a federal court must determine whether jurisdiction comports with federal constitutional guarantees of due process. *Id.* at 216.

"The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Both prongs of the due process test must be met" for the Court to exercise personal jurisdiction over a defendant. *See id.*

A nonresident defendant's minimum contacts may either support an assertion of specific or general jurisdiction. *WNS Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989). A court may exercise specific jurisdiction when a cause of action arises out of a defendant's purposeful contacts with the forum. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361–62 (5th Cir. 1990). Alternatively, a court is said to have general jurisdiction when a defendant has engaged in continuous and systematic contacts with the forum. *Id.*

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts. *WNS*, 884 F.2d at 203. Further, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs.*, 754 F.2d at 546 (citations omitted).

B.     *Venue*

A defendant may move to dismiss or transfer a case for improper venue under Federal Rule of Civil Procedure 12(b)(3). Once a defendant has objected to venue, the burden shifts to the plaintiff to establish that venue is proper. *Wolf Network, LLC, v. AML Diagnostics, Inc.*, No. 3:15-cv-

3797-B, 2016 WL 1357742, at *1 (N.D. Tex. Apr. 5, 2016).[2] 28 U.S.C. § 1391 sets out three categories of proper venue:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; and (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3). "When venue is challenged, the court must determine whether the case falls within one of the[se] three categories." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). In making this decision, the court must accept as true all of Plaintiff's factual allegations "and resolve all factual conflicts in Plaintiff's favor." *Nuttall*, 984 F. Supp. 2d at 642. "[T]he court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). If the plaintiff's choice of forum falls within one of the above categories, then venue is proper. But if it does not, then "venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Atl. Marine*, 571 U.S. at 56.

C.    *Failure to State a Claim*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a

---

[2]Although some courts in this circuit have held that the burden for establishing venue lies with the defendant, see, *e.g.*, *Holdridge v. TricorBraun, Inc.*, No. 3:13-cv-1202-L, 2013 WL 3213318, at *3 (N.D. Tex. June 26, 3013), other courts, including this one, have consistently held that the plaintiff bears the burden. *See Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 n. 3 (N.D. Tex. 2013); *Inst. for Creation Research Graduate Sch. v. Paredes*, No. 3:09-cv-0693-B, 2009 WL 4333366, at *2 (N.D. Tex. Dec. 1, 2009).

claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under Rule 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (citation omitted) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (c.

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up). And "[a]lthough dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

## III.

## ANALYSIS

The Court analyzes Neat Print's motion in the following order: (a) personal jurisdiction, (b) the Declaratory Judgment Act, (c) venue; (d) the doctrine of primary jurisdiction, and (e) failure to state a claim.

For the reasons below, the Court finds that: (a) the Court can assert specific personal jurisdiction over Neat Print; (b) there is a basis for subject-matter jurisdiction independent of the Declaratory Judgment Act; (c) the Northern District of Texas is a proper venue for this case due to Nursery Decals's sales in this district; (d) the doctrine of primary jurisdiction should not be asserted here, where there are causes of action that would not be decided in the TTAB proceedings; and (e) Neat Print's conclusory failure-to-state-a-claim arguments do not support dismissal of Nursery Decals's causes of action.

Thus, the Court **DENIES in full** Neat Print's motion.

A.     *Personal Jurisdiction*[3]

Neat Print argues that this Court lacks specific personal jurisdiction over it. Doc. 9, Def.'s Br., 8. First, Neat Print argues that it has not purposely availed itself to Texas's privileges or laws. *See id.* at 10. Specifically, Neat Print argues that it neither purposely directed its activities at the Northern District of Texas nor marketed or advertised in the Northern District of Texas. *Id.* at 11.

Next, Neat Print argues that Nursery Decals's causes of action do not arise out of any of Neat Print's Texas-related contacts. *Id.* at 11–12. Neat Print notes that Nursery Decals's causes of action

---

[3] Because Nursery Decals does not argue that the Court has general personal jurisdiction over Neat Print, see Doc. 11, Pl.'s Resp., 12, the Court will only analyze whether it has specific personal jurisdiction over Neat Print.

do not allege trademark infringement; instead, they seek declaratory relief that Neat Print's trademarks are invalid. *Id.* Neat Print believes that its "efforts to secure it trademarks were conducted entirely from Florida," and the only claims of Nursery Decals that even "tangentially relate[] to Texas are its tortious interference claims[.]" *Id.* at 11–12.

Finally, Neat Print argues that it would be unfair for the Court to exercise personal jurisdiction in this matter. *Id.* at 12. Neat Print explains that Nursery Decals has initiated three TTAB proceedings "that it has allowed to languish," and is now "look[ing] to this Court to provide a safety net." *Id.*

For the reasons below, the Court disagrees and concludes that it has specific personal jurisdiction over Neat Print with respect to Nursery Decals's claims.

To start, Neat Print argues that because Nursery Decals's tortious interference claims fail as a matter of law, they "should not be considered in the jurisdictional analysis." Doc. 13, Def.'s Reply, 6. However, because personal jurisdiction is a threshold issue, courts must reach the personal jurisdiction issue "before reaching claims on the merits." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (citation omitted).

With that in mind, the Court now proceeds to each prong of the specific personal jurisdiction test.

1.    Minimum contacts

The Court finds that Neat Print has the necessary minimum contacts for this Court to exercise personal jurisdiction over it.

Under *Calder v. Jones*, 465 U.S. 783 (1984), "the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Mullins v.*

*TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted). Just because the plaintiff resides in a state and felt the effects of the defendant's conduct there does not, on its own, support specific personal jurisdiction in that forum state. *Id.* at 401 (citation omitted). Thus, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco* Co., 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. at 789–90). Id. at 400 (internal quotation marks and citation omitted). Additionally, the intentionally tortious conduct must be "expressly aimed" at the forum state. *Mullins*, 564 F.3d at 400 (quoting *Calder*, 465 U.S. at 789–90).

In *Mullins*, the Fifth Circuit discussed *Calder* in the context of tortious interference with contract claims. *See* 564 F.3d at 402. The Fifth Circuit explained that "[i]n that context, we determine whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured contractual relationship." *Id.* (citation omitted). The Fifth Circuit summarized one tortious-interference-with- contract case as follows: "the defendant shipper's awareness of and interference with a contractual relationship between two Texas-based companies whose business relationship centers around Texas and that resulted in harm to plaintiff in Texas supported personal jurisdiction in Texas[.]" *Id.* (summarizing *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383–84 (5th Cir. 2003)).

In *SGS-Thomson Micro-Electronics, Inc. v. Ferris*, SGS brought suit in the Northern District of Texas against Ferris, seeking a declaratory judgment that Ferris's copyright against SGS was invalid, or, in the alternative, that SGS was not infringing on Ferris's copyright. 1995 WL 313932,

at *1 (5th Cir. May 1, 1995) (per curiam). SGS also brought unfair competition, tortious harassment, extortion, and defamation claims against Ferris based on Ferris's cease-and-desist letter alleging that SGS was infringing upon Ferris's copyright. *Id.* Ferris argued that there was no personal jurisdiction. *Id.* The court found there was personal jurisdiction.

The Fifth Circuit disagreed and held that the district court properly found that it had personal jurisdiction over Ferris. *Id.* at *3. The Fifth Circuit explained that Ferris "is alleged to have purposefully directed his activities to Texas," in that "[h]e initiated at least one and perhaps several contacts to Texas aimed at a Texas resident." *Id.* (quotations and citations omitted). The Fifth Circuit noted how "purposeful forum-directed activity—even if only a single substantial act—may permit the exercise of specific jurisdiction in an action arising from or related to such acts[.]" *Id.* (citation omitted).

District courts in Texas have interpreted *SGS* as standing for the proposition that if a plaintiff is bringing tort claims independent of a declaratory judgment of non-infringement, a cease-and-desist letter sent by a defendant can be the basis for exercising specific personal jurisdiction in Texas. *See J & J Martindale Ventures, LLC v. E. End Brewing Co., Inc.*, 2016 WL 1726021, at *4 (W.D. Tex. Apr. 27, 2016) (citation omitted) ("[T]he Fifth Circuit found that sufficient minimum contacts arose not from copyright issues raised by the letter, but from the letter's allegedly tortious harassment of a forum resident."); *Great Priory of Am. Knights Beneficent of the Holy City Rectified Scottish Rite v. Koon II*, 2014 WL 12497028, at *3 (W.D. Tex. Sept. 30, 2014) ("Where the plaintiff has not alleged a tort cause of action but seeks only declaratory relief, the plaintiff's claim does not arise out of the defendant's cease and desist letter.") (citation omitted); *Sablatura v. Kokopelli, Inc.*, 2010 WL 4394250, at *2 (S.D. Tex. Oct. 29, 2010) ("In [*SGS-Thomson*], however, the plaintiff pleaded tort

causes of action . . . . The district court therefore found that the tort claims 'arose out of' the contents of the cease-and-desist letter.") (citations omitted).

Similarly, here, Nursery Decals's claims stem not from the trademark issues that may have been put into question by Neat Print's actions, but instead from those actions' allegedly tortious effect in Texas. Although unpublished, *SGS* is persuasive. This is so even though here, rather than Neat Print sending a cease-and-desist letter to Texas, it instead sent a takedown notice to Etsy, a third party not located in Texas. *See* Doc. 1, Compl., ¶ 65.

The Court believes that this distinction is irrelevant. In fact, Neat Print's alleged actions arguably have more of a connection to Texas than a cease-and-desist letter: while such a letter threatens that certain actions might be taken, here, Neat Print *did* take action by contacting a third-party to shut down Nursery Decals's business. *See* Doc. 1, Compl., ¶ 24. The Court finds the Tenth Circuit's reasoning in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), instructive in this regard. In *Dudnikov*, the Dudnikovs sought a declaratory judgment of non-infringement against Chalk & Vermilion Fine Arts, Inc. *Id.* at 1068. Chalk had sent a notice of claimed infringement to eBay, alleging that the Dudnikovs were selling products that infringed on Chalk's copyrights. *Id.* at 1068–69. The Dudnikovs alleged that Chalk sent this notice to "terminate plaintiffs' auction" on eBay. *Id.* at 1074.

The Dudnikovs brought suit in Colorado. *Id.* at 1069. Chalk was a Delaware corporation with its principal place of business in Connecticut, while the takedown notices were sent to eBay in California. *Id.* at 1068, 1075.

Nevertheless, the Tenth Circuit held there was specific personal jurisdiction against Chalk in Colorado under *Calder*. The Tenth Circuit first explained that it distilled three requirements from

*Calder*: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . ." *Id.* at 1072. Further, the court explained that "the 'express aiming' test focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts—while the latter requirement concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff." *Id.* at 1075.

The Tenth Circuit first found there was an intentional act: "the intentional action of sending a [takedown notice] specifically designed to terminate plaintiffs' auction . . . ." *Id.* at 1074. Next, the court found that the takedown notice was expressly aimed at Colorado, where the Dudnikovs located their eBay business. *Id.* at 1075. Although the takedown notice was sent to California, and not Colorado, the takedown notice could "be fairly characterized as an intended means to the further intended end of cancelling plaintiffs' auction in Colorado." *Id.* Because the Dudnikovs alleged that Chalk knew that their business was located in Colorado, Chalk was "alleged to have *intended* [its] extra-forum conduct to reach and affect plaintiffs' business operations in Colorado." *Id.* at 1076 (emphasis in original).

Finally, the Tenth Circuit found that the Dudnikovs sufficiently pled that Chalk "knew plaintiffs' business and auction were based in Colorado, and therefore knew the effects of the [takedown notice] would be felt there." *Id.* at 1077. And "actions that 'are performed for the very purpose of having their consequences felt in the forum state' are more than sufficient to support a finding of purposeful direction under *Calder*." *Id.* at 1078 (quoting *Finley v. River N. Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998)).

The Court finds the case here similar to that in *Dudnikov*. Here, Nursery Decals has alleged that Neat Print committed an intentional act by "submitt[ing] takedown notices to Etsy . . . ." Doc. 1, Compl., ¶ 5. Next, Nursery Decals believes that the takedown notice was expressly aimed at the forum state, like in *Dudnikov*, because it is "prominently displayed on [Nursery Decals's] Etsy's page" that Nursery Decals' business is located in Texas. Doc. 11, Pl.'s Resp., 15 (citing Doc. 12, Pl.'s App., Woodward Decl., ¶ 5); *see also Int'l Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) ("In resolving a jurisdictional issue, the court may review . . . affidavits . . . ." (citing *Command-Aire Corp. v. Ontario Mech. Sales & Serv., Inc.*, 963 F.2d 90, 95 (5th Cir. 1992))). Thus, like the takedown notice in *Dudnikov*, Neat Print's takedown notice could "be fairly characterized as an intended means to the further intended end of cancelling" Nursery Decals's Etsy business in Texas. *See Dudnikov*, 514 F.3d at 1075; *cf. Transverse, LLC v. Info Directions, Inc.*, 2013 WL 3146838, at *10 (W.D. Tex. June 17, 2013) (distinguishing *Dudnikov* because the plaintiff in *Transverse* "d[id] not point to any conduct, any event, any action that [the defendant] . . . caused to occur[] within Texas"). And finally, because Nursery Decals alleges that Neat Print knew that Nursery Decals's business would be affected in Texas, see Doc. 1, Compl., ¶ 5, the "purposeful direction" prong of *Calder* is also satisfied. *See Dudnikov*, 514 F.3d at 1078.

In light of *Mullins* and *SGS*, the Court finds *Dudnikov* persuasive. Because of Neat Print's alleged intentional conduct, "[i]t is [] no 'mere fortuity' that [Neat Print's] conduct would cause injury to [Nursery Decals] in Texas." *See Mullins*, 564 F.3d at 402 (citation omitted). Neat Print thus has the minimum contacts necessary to be subject to personal jurisdiction in Texas.[4]

---

[4] Neat Print attempts to distinguish *Calder* by arguing that "*Calder's* point of novelty was the intersection between specific jurisdiction and freedom of speech." Doc. 13, Def.'s Reply, 6. However, the Supreme Court in *Calder* specifically "reject[ed] the suggestion that First Amendment concerns enter into

2.  Whether Nursery Decals's causes of action arise out of or result from Neat Print's forum-related activities

Neat Print next argues that because the declaratory relief causes of action relate to its "efforts to secure its trademarks . . . conducted entirely from Florida," those claims do not arise from any of Neat Print's Texas-related activity. Doc. 9, Def.'s Br., 11–12. To Neat Print, the "only claims that even tangentially relate[] to Texas are its tortious interference claims . . . ." *Id.* at 12.

For there to be specific personal jurisdiction, a plaintiff's cause of action must "arise[] out of or result[] from the defendant's forum-related contacts . . . ." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (citation and quotation marks omitted).

The Court concludes that Nursery Decals's tortious interference claims arise out of or result from Neat Print's forum-related contacts. *See id.* Nursery Decals's tortious-interference-with-existing-business-relationship claim alleges that "Neat Print intentionally and willfully interfered with existing business relationships Nursery Decals had/has with the online marketplace Etsy, as well as Etsy consumers/shoppers, by submitting a takedown notice based on false allegations that Nursery Decals was infringing [on Neat Print's] trademarks." Doc. 1, Compl., ¶ 60. As for its tortious-interference-with-prospective-business-relationship claim, Nursery Decals alleges that "Neat Print intentionally and willfully interfered with prospective business relationships between Nursery Decals and Amazon and Etsy customers by submitted a takedown notice" to Etsy. *Id.* ¶ 65. The basis for these claims, then, is the takedown notice Neat Print sent to Etsy—the same takedown notice upon which Nursery Decals relies to establish specific personal jurisdiction. *See id.* ¶ 5 (arguing that the Court has personal jurisdiction over Neat Print because Neat Print "submitted takedown notices to Etsy

---

the jurisdictional analysis" because "such considerations would needlessly complicate an already imprecise inquiry." 465 U.S. at 790 (citation omitted).

that resulted in the suspension of Nursery Decals' sales of popular products on the website" to, amongst others, consumers "in this Judicial District").

The Court also concludes that the declaratory judgment causes of action satisfy this prong of the specific personal jurisdiction test. "Courts across the country look to patent cases as persuasive authority when handling trademark disputes generally," and "specifically in regards to determining personal jurisdiction in declaratory judgment actions." *Nana Joes, LLC v. Microbiotic Health Foods, Inc.*, 2018 WL 905531, at *5 (E.D. Tex. Feb. 15, 2018) (collecting cases). And "[c]laims in the declaratory judgment context must arise out of, or relate to, a defendant patentee's enforcement of the patents in suit." *Alpha Creations, Inc. v. Daniel K. Fine Jewelry USA, LLC*, 2018 WL 654468, at *1 (S.D. Tex. Jan. 30, 2018) (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). Here, the Court holds that Nursery Decals's declaratory judgment causes of action directly stem from Neat Print's takedown notice sent to Etsy—in other words, Neat Print's attempted "enforcement of the [trademarks] in suit." *Id.*

Thus, Nursery Decals's causes of action arise out of or result from Neat Print's forum-related contacts. *See Stroman Realty*, 513 F.3d at 484 (citation and quotation marks omitted).

3.    Whether exercising personal jurisdiction is fair and reasonable

Neat Print believes that because Nursery Decals "has commenced three . . . TTAB proceedings that it has allowed to languish," it would be "patently unfair for the Court to exercise jurisdiction . . . ." Doc. 9, Def.'s Br., 12. Neat Print claims that Nursery Decals has "missed all of the operative deadlines in the TTAB" cases, and is thus "using this Court to engage in blatant forum shopping." *Id.*

"Assertion of jurisdiction must be fair and reasonable. Defendants shoulder the burden and must make a 'compelling case'" that jurisdiction is unfair and unreasonable. *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 778 n.36 (5th Cir. 2018) (citation omitted). To determine whether exercising personal jurisdiction would be fair and reasonable, a court considers the following factors: "(1) the defendant's burden, (2) the forum state's interest, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the state's shared interest in fundamental social policies." *Clarity Research & Consulting, LLC v. OmniWest, LLC*, 2017 WL 1535235, at *5 (W.D. Tex. Apr. 26, 2017) (citing *Rustin Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d at 421 (5th Cir. 1993)).

Neat Print's "forum shopping" argument seems to fit into factor (4) above. Because it is Neat Print's burden to show that exercising specific personal jurisdiction, see *In re DePuy*, 888 F.3d at 778 n.36, the Court will only consider factor (4).

The Court does not find that Neat Print has made a "compelling case" here. *See id.* First, Neat Print cites no case law that suggests that parallel TTAB or similar proceedings, or forum shopping, makes the assertion of personal jurisdiction unfair or unreasonable. *See* Doc. 9, Def.'s Br., 12. Second, as Nursery Decals notes, "[t]he TTAB proceedings have been stayed—and all deadlines extended—by concession and/or agreement of the parties." Doc. 11, Pl.'s Resp., 22. Neat Print concedes that this is the case. Doc. 13, Def.'s Reply, 6. Thus, it appears that the delay in the TTAB proceedings is at least in part attributable to Neat Print.

Moreover, as Neat Print concedes, see Doc. 13, Def.'s Reply, 5–6, the TTAB proceedings do not involve the state tortious interference claims that Nursery Decals has brought here. Thus, this Court believes that this current lawsuit is, in fact, where the "efficient resolution of [the parties']

controversies" can be achieved. *See Clarity Research and Consulting, LLC*, 2017 WL 1535235, at *5 (citation omitted). Neat Print has fallen short of its burden to show that the exercise of specific personal jurisdiction here is unfair and unreasonable.

Because all three requirements for specific personal jurisdiction have been met, Neat Print's motion to dismiss based on a lack of personal jurisdiction is **DENIED**.

B.      *Subject Matter Jurisdiction*

Next, Neat Print seeks to dismiss the declaratory judgment actions because, to Neat Print, "the Fifth Circuit has held that declaratory [judgment] actions seeking declarations do not arise under the Lanham Act and do not confer jurisdiction on this Court." Doc. 9, Def.'s Br., 13–14. Neat Print relies on *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968 (5th Cir. 1975). Neat Print believes that Nursery Decals's case "is no different, for jurisdictional purposes, than Red Lobster's claims." *Id.* at 14.

"[T]he Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, does not provide a federal court with an independent basis for exercising subject-matter jurisdiction." *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001) (citation omitted). This is because "[a] declaratory judgment action is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law." *Capital One v. Swisher-35 Ltd.*, 2008 WL 4274499, at *2 (N.D. Tex. Sept. 17, 2008) (citing *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990)).

Thus, there are three requirements for a declaratory judgment action: (1) justiciability, meaning whether there is "an 'actual controversy' that exists between the parties to the action"; (2) "whether [the court] has the 'authority' to grant declaratory relief in the case presented"; and (3)

whether the court, in its discretion, determines it will decide the declaratory action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Speaking in the declaratory judgment context, the Fifth Circuit has explained that, "[a]s a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.* at 896 (alterations in original) (citations omitted).

For intellectual property cases, an actual controversy is present if a declaratory judgment plaintiff "has taken steps such as producing prototypes or samples of the allegedly infringing products, soliciting business from and sending advertising to potential customers, or otherwise investing significant funds in preparation produce the products . . . ." *Bhl Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2017 WL 1177966, at *3 (S.D. Tex. Mar. 29, 2017) (quoting *Young v. Vannerson*, 612 F. Supp. 2d 829, 844 (S.D. Tex. 2009)).[5]

Here, there is an actual controversy under trademark law. Nursery Decals admits that it was using the "Be Nice to me My Wife is Pregnant" and "Man Behind the Bump" marks on Etsy, and that it "had no choice but to remove from Etsy all listings for t-shirts that include any phrases registered by [Neat Print] as a purported trademark . . . ." Doc. 1, Compl., ¶ 24. Nursery Decals thus admits that it had prepared, and perhaps sold, allegedly infringing products. This is sufficient to bring declaratory actions for non-infringement. *See Bhl Boresight*, 2017 WL 1177966, at *4 (finding an actual controversy for the defendant's declaratory judgment counterclaims where the defendant was engaged in the "manufacture, use or sale" of the products at issue). Moreover, all of Nursery Decals's

---

[5]Although *Bhl Boresight* involved copyright, "[a] common framework for analysis applies to all patent, copyright, and trademark declaratory judgment suits." *Bhl Boresight*, 2017 WL 1177966, at *3 n.4 (citing *Texas v. W. Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989)).

declaratory actions relate to this actual controversy, as they all would have the effect of declaring that Nursery Decals did not infringe on any of Neat Print's potential trademarks.

Next, the Court has the "authority" to grant the relief requested. Here, Nursery Decals is seeking cancellation of Neat Print's marks based upon invalidity and fraud upon the USPTO. *See* Doc. 1, Compl., 12–21. The Court has the authority to do so. *See Orix*, 212 F.3d at 895; *see also* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations . . . ."); *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 644 (N.D. Tex. 2009) ("Section 33(b)(1) of the Lanham Act provides a defense against a registered mark when a 'registration . . . was obtained fraudulently." (quoting 15 U.S.C. § 1115(b)(1))).

Lastly, because of this explicit authority, and Nursery Decals's allegation that Neat Print accused it of trademark infringement, see Doc.1, Compl., ¶ 24, the Court exercises its discretion and will not dismiss the declaratory judgment actions. *See Orix*, 212 F.3d at 895.

*Red Lobster* is distinguishable. In *Red Lobster*, the Fifth Circuit "f[ound] no error in the trial court's holding that the opposition proceedings before the [USPTO] did not constitute a claim of infringement and therefore did not present an actual controversy as required by the Declaratory Judgment Act . . . ." 524 F.2d at 969.[6] Here, on the other hand, an actual controversy beyond the

---

[6] Additionally, *Red Lobster* was decided before *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), which expanded the scope declaratory actions for non-infringement in intellectual property suits. *See Bhl Boresight*, 2017 WL 1177966, at *3 (explaining that the Supreme Court rejected the "reasonable apprehension of suit" test for a "totality-of-the-circumstances approach" that looks at whether the plaintiff took steps to engage in infringing conduct) (citations omitted); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012); *Prasco, LLC v. Medicis Pharm Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).

TTAB proceedings is present: Nursery Decals allegedly infringed on Neat Print's marks, which led to Nursery Decals sending a takedown notice to Etsy. *See* Doc. 1, Compl., ¶ 24.

Thus, Neat Print's motion to dismiss the declaratory judgment actions on this ground is **DENIED**.

C.    *Venue*

Neat Print next argues that the Northern District of Texas is an improper venue for Nursery Decals's suit. Doc. 9, Def.'s Br., 12. Neat Print believes that no "substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of Texas. *Id.* at 13 (quoting 28 U.S.C. § 1391(b)). Neat Print believes that "[t]he operative nucleus of each of" Nursery Decals's declaratory judgment actions "is based on the registrations" of the trademarks, which occurred in "the Middle District of Florida, not the Northern District of Texas." *Id.* And Neat Print believes that although Neat Print's tortious interference claims are the "only claims that even arguably touch the Northern District of Texas," these "claims fail as a matter of law." *Id.*

The Court disagrees with Neat Print and concludes that the Northern District of Texas is a proper venue for this action. Nursery Decals believes that a substantial amount of the harm that it suffered occurred in this district. Doc. 11, Pl.'s Resp., 20.

In trademark infringement actions themselves, courts consider "several factors, such as 'whether the allegedly infringing labels were affixed in the district, whether confusion to consumers is likely to occur in the district, whether sales occur there, and whether the defendant actively targeted the district for advertising or other sales-related purposes.'" *Shippitsa Limited v. Slack*, 2019 WL 3304890, at *7 (July 23, 2009) (citation omitted); *see also* 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:64 (5th ed. 2020) (explaining that

venue is appropriate in "any place where there are sales or advertising of the accused goods or services bearing the accused mark," as such "is a place where the events giving rise to trademark infringement occur").

Thus, Neat Print could bring a trademark infringement action against Nursery Decals in the venue in which a substantial number of Nursery Decals's allegedly infringing products were sold. It makes sense, then, that Nursery Decals—the alleged infringer—could bring a declaratory judgment action of non-infringement in that same venue. Such is the case in declaratory judgment actions alleging non-infringement of patents. *See Jeffers Handbell Supply, Inc. v. Schulmerich Bells, LLC*, 2017 WL 3582235, at *8 ("[C]ourts have concluded that a substantial part of the events or omissions giving rise to such an action occurs where the acts that would give rise to a potential claim of patent infringement occurred.") (collecting cases). And because declaratory judgment actions for patent non-infringement are governed by 28 U.S.C. § 1391, *see VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990), *abrogated on other grounds by TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514 (2017), the Court finds that the same could be said for declaratory judgment actions for trademark non-infringement. *See also Nana Joes, LLC*, 2018 WL 905531, at *5 ("Courts across the country look to patent cases as persuasive authority when handling trademark disputes generally . . . .").

Applying those principles to the case at hand, the Court finds that a "substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Texas. 28 U.S.C. § 1391(b)(2). Nursery Decals avers that over 25% of its Texas sales that were suspended as a result of Neat Print's takedown notice took place in the Northern District of Texas. Doc. 11, Pl.'s Resp., 20 (citing Doc. 12, Ex. 1 (Woodward Decl.), ¶ 7)); *see Burlington Ins. Co. v. 2 M Servs., LLC*, 2011

WL 13238370, at *2 (W.D. Tex. Oct. 6, 2011) ("On a motion to dismiss for improper venue, the Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.") (alterations incorporated) (citation and quotation marks omitted).[7] Nursery Decals explains that, therefore, "the Northern District of Texas is [its] closest large market for the specific products and sales suspended as a result . . . ." *Id.* (citing Doc. 12, Pl.'s App., Ex. 1 (Woodward Decl.), ¶ 7)). And because Nursery Decals grosses approximately $3,500,000 in sales from its online business, 25% of its Texas sales—the state in which Nursery Decals is located—is considered substantial for purposes of venue under § 1391(b)(2). *See Shippitsa*, 2019 WL 3304890, at *7 (finding venue proper where the allegedly infringing products were sold through a website "to 172 district residents"); 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:64 (5th ed. 2020) ("[I]f a significant amount of goods are sold in a federal district through an interactive website, then that district is a proper place of venue as a place where a substantial part of the events giving rise to the claim arose.").

Additionally, Neat Print's argument that Nursery Decals's tortious interference claims fail as a matter of law is not relevant to the Court's venue analysis. A court that is an improper venue *cannot* reach the merits of a cause of action. *See AGIS Software Dev., LLC v. ZTE Corp.*, 2018 WL 4854023, at *4 (E.D. Tex. Sept. 28, 2018) (explaining that when there is improper venue, transfer to a proper venue, rather than dismissal, is appropriate when "'time-consuming and justice defeating technicalities' would . . . prevent the case from being *heard on the merits in the proper venue*") (emphasis added) (quoting *Dubin v. United States*, 380 F.2d 813, 815 (5th Cir. 1967)). Thus, the

---

[7] Woodward is the sole owner, founder, and President of Nursery Decals. *See* Doc. 12, Pl.'s App., Ex. 1 (Woodward Decl.), ¶ 1.

Court must decide whether the Northern District of Texas is a proper venue before it reaches the merits of Nursery Decals's causes of action.

For the foregoing reasons, Neat Print's motion to dismiss for improper venue is **DENIED**.

D.      *Doctrine of Primary Jurisdiction*

Neat Prints next attempts to stay or dismiss this action under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction "comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the court and of the agency." *Officeware Corp. v. Dropbox, Inc.*, 2012 WL 3262760, at *2 (N.D. Tex. Aug. 10, 2012) (quoting *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091–92 (5th Cir. 1973)). "The doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area." *Id.* (quoting *Mercury Motor Express, Inc.*, 475 F.2d at 1091–92).

Neat Print relies on two principle arguments to support the application of primary jurisdiction: (1) Nursery Decals commenced multiple proceedings at the TTAB that it let "languish," and (2) because the tortious interference claims fail as a matter of law, "the remaining allegations seek cancellation of [Neat Print's] Marks or a declaration that such Marks are not valid." Doc. 9, Def.'s Br., 15. To Neat Print, "[Nursery Decals] has no valid claims in this litigation that go beyond what is already at TTAB." *Id.*

The Court declines to stay or dismiss the case under primary jurisdiction. Again, the Court rejects the relevance of Neat Print's merit-based arguments here. The Court should decide jurisdictional issues *before* it reaches the merits. *See Halcyon Biomedical, Inc. v. Glatt Air Techniques, Inc.*, 2019 WL 2420232, at *4 (S.D. Tex. June 10, 2019) (deciding to "look[] first at personal

jurisdiction, then at venue, and finally at the motions for failure to state a claim and judgment on the pleadings") (citations omitted). Moreover, the Court reaches, and rejects, Neat Print's merit-based arguments below.

Thus, the Court does not consider the merits of Nursery Decals's tortious interference claims when deciding whether or not the doctrine of primary jurisdiction applies. As Nursery Decals explains, even if the TTAB ruled on the validity of Neat Print's trademarks, "the Court would still need to make rulings on the tortious interference and non-infringement claims," as those "are not dependent on any finding of invalidity . . . ." Doc. 11, Pl.'s Resp., 11. This cuts against staying the case under the doctrine of primary jurisdiction. *See Vantage Trailers, Inc. v. Beall Corp.*, 2008 WL 4746288, at *5 (S.D. Tex. Oct. 27, 2008) ("[E]ven if a parallel administrative proceeding was underway, courts have consistently declined to defer to the TTAB when, like here, additional claims are raised that cannot be resolved by the agency.") (citation omitted).

Other circuits have explained why the doctrine of primary jurisdiction should not automatically apply to parallel TTAB proceedings. In *Goya Foods, Inc. v. Tropicana Products, Inc.*, the Second Circuit explained that trademark proceedings do not involve "a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control . . . ." 846 F.2d 848, 853 (2d Cir. 1988) (citation omitted). And whether a trademark is properly registered does not involve "technical questions of fact uniquely within the expertise and experience of an agency." *Id.* (citation omitted). Additionally, the Ninth Circuit, in citing the First Circuit, explained that the TTAB "is not an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1163 (9th Cir. 2007)

(quoting *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (1st Cir. 1996)). Thus, the Court finds these cases persuasive.

Finally, staying this case would be inefficient. One of Neat Print's arguments for the Court to assert the doctrine of primary jurisdiction is that the issues here are "pending" before the TTAB. Doc. 9, Def.'s Br., 9–10. However, Nursery Decals explains that both it and Neat Print agreed to stay those proceedings. Doc. 11, Pl.'s Resp., 15. The only response to this from Neat Print is that "[r]egardless of the stipulation to toll deadlines, the TTAB proceedings were at [or] near their end when entered." Doc, 13, Def.'s Reply, 6. However, the Court finds it inefficient to stay this case because another case—that was recently stayed by agreement by both parties—could possibly be reopened. *See Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))).

For the foregoing reasons, Neat Print's motion to stay the proceedings is **DENIED**.

E.    *Failure to State a Claim*

Finally, Neat Print seeks to dismiss Nursery Decals's claims under Federal Rule of Civil Procedure 12(b)(6). The extent of Neat Print's brief dedicated to its motion for failure to state a claim under Rule 12(b)(6) consists of reciting the motion-to-dismiss standard and the pleading requirements of Rules 8 and 9, and then asserting, in a conclusory fashion, that Nursery Decals did not meet this standard. *See* Doc. 9, Def.'s Br., 15–19. These are insufficient grounds upon which the Court will grant a motion to dismiss for failure to state a claim. *See Awawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 736 (W.D. Tex. 2019), *appeal filed*, No. 19-50384 (5th Cir. May 2, 2019)

("The movant . . . bears the burden of proof for a 12(b)(6) motion[.]") (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

The only time that Neat Print provides a non-conclusory argument is when it argues that it has "the defense of justification" to the tortious interference claims. *See* Doc. 9, Def.'s Br., 18. Neat Print believes that "[b]ecause Neat Print has issued trademarks, until such trademarks are invalidated, [Nursery Decals] has no claim for tortious interference under Texas law." *Id.* at 18–19.

"Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (citation omitted). Neat Print's asserted affirmative defense is better analyzed at summary judgment or trial. This is apparent even from the case upon which Neat Print primarily relies, *Community Health System Professional Services Corporation v. Hansen*, 525 S.W.3d 671 (Tex. 2017). *See* Doc. 9, Def.'s Br., 18. In *Hansen*, the Texas Supreme Court explained "that the affirmative defense of justification can be based on the exercise of either: (1) one's own legal rights; or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken. 525 S.W.3d at 697 (citation omitted).

Here, Neat Print has not conclusively established its legal rights. This is so because "[t]he presumption of validity of the [trade]mark is rebuttable and may be overcome by demonstrating, by a preponderance of the evidence, that the mark is generic, or if descriptive, that it lacks a secondary meaning." *Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, 2003 WL 251318, at *3 (N.D. Tex. Feb. 3, 2003). And although Neat Print could potentially rely on a "good-faith claim to a colorable legal right," the Court needs evidence, not just the complaint, to determine whether prong (2) under *Hansen* is met. *See Hansen*, 525 S.W.3d at 697 (concluding that the defense of justification is

established this way "if the trial court determines that the defendant interfered while exercising a colorable right, and the jury finds that, although mistaken, the defendant exercised that colorable right in good faith") (citation and quotation marks omitted).

For the reasons discussed above, Neat Print has not shown how its affirmative defense "appear[s] on the face of the complaint." *See Kelly*, 868 F.3d at 374 (citation omitted).

Lastly, because the Court finds that Nursery Decals's claims are plausible, the Court will not dismiss Nursery Decals's claim for injunctive relief. *See* Doc. 9, Def.'s Br., 19 (arguing that Nursery Decals's "claim for injunctive relief should be dismissed because it is a remedy that requires a valid claim").

For these reasons, the Court **DENIES** Neat Print's motion to dismiss for failure to state a claim.

## IV.

## CONCLUSION

For the foregoing reasons, Neat Print's motion (Doc. 8) is **DENIED**.


SO ORDERED.

SIGNED: April 10, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE