UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NURSERY DECALS AND MORE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2606-B |
| | § | |
| NEAT PRINT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Nursery Decals and More, Inc. ("Nursery Decals")'s Motion for Summary Judgment (Doc. 44), Defendant Neat Print, Inc. ("Neat Print")'s Motion for Partial Summary Judgment (Doc. 47), and Neat Print's Motion to Dismiss for Want of Jurisdiction and Motion to Decline to Exercise Supplemental Jurisdiction (Doc. 59). For the reasons that follow, the Court **DENIES** Defendant's motion to dismiss, **GRANTS IN PART** and **DENIES IN PART** Plaintiff's summary-judgment motion, and **GRANTS IN PART** and **DENIES IN PART** Defendant's summary-judgment motion.

## I.

## BACKGROUND[1]

This is a trademark dispute between novelty t-shirt sellers. Plaintiff Nursery Decals is a Texas-based company that designs, markets, and sells clothing and other items. Doc. 1, Compl., ¶ 7. Nursery Decals uses online marketplaces such as Amazon and Etsy to sell approximately $3,500,000

---

[1] All facts are taken from Plaintiff Nursery Decals's complaint. *See* Doc. 1, Compl.

in goods annually. *Id.* The sayings it uses on its clothing "do not identify Nursery Decals," and "are purely informational and/or ornamental material displayed across the front of a t-shirt or other clothing." *Id.* "Defendant Neat Print is a Florida-based retailer of clothing, specifically t-shirts . . . ." *Id.* ¶ 8. Neat Print's clothing bears slogans and sayings, such as "Papa, the Man, the Myth, the Legend," "thankful," and "having a weird mom builds character." *Id.* Neat Print also uses online platforms such as Amazon and Etsy. *Id.*

Nursery Decals alleges that Neat Print's business involves "applying for and/or obtaining invalid trademark registration of generic slogans and popular sayings," and then submitting "'take down notices' on numerous marketing platforms on the basis of purported trademark infringement." *Id.* ¶ 21. Nursery Decals believes that "[t]he intent of such actions is to shut down competition and obtain a competitive edge over other T-shirt retailers[.]" *Id.*

On July 8, 2014, Neat Print filed an application for trademark registration with the United States Patent and Trademark Office (USPTO) for the "BE NICE TO ME, MY WIFE IS PREGNANT" mark (Registration No. 4,746,598) for use on clothing (the "598 Mark"). *Id.* ¶ 9. Nursery Decals explains that although Neat Print warranted to the USPTO that no one had the right to use this mark such that use of the mark would not result in confusion, mistake, or deception, others had been using the mark before July 8, 2014 (the "prior use" allegation). *Id.* Nursery Decals also alleges that the sample of the mark Neat Print submitted in its application was not an accurate depiction of how the mark was to be used on Neat Print's clothing (the "false sample" allegation). *Id.* ¶ 11.

Also on July 8, 2014, Neat Print filed an application with the USPTO for registration of the "THE MAN BEHIND THE BUMP" mark (Registration No. 4,746,597) for use on clothing (the

"597 Mark"), and the "YOU CAN'T SCARE ME" mark (Registration No. 5,256,615) for use on clothing (the "615 Mark"). *Id.* ¶¶ 12, 15. Nursery Decals repeats its prior use and false sample allegations with respect to the 597 and 615 marks. *See id.* ¶¶ 12–14, 15–17.

Registrations for the 597 and 598 marks were issued on June 2, 2015, while registration for the 615 mark was issued on August 1, 2017. *Id.* ¶¶ 12, 15.

On July 16, 2014, Neat Print filed an application with the USPTO for federal trademark registration of the "WORLD'S OKAYEST" mark (Registration No. 5,076,010) for use on clothing (the "010 Mark"). *Id.* ¶ 18. Nursery Decals repeats its prior use and false sample allegations with respect to the 010 mark. *Id.* ¶¶ 18–20.

On May 9, 2018, "just prior to Father's Day,"  Etsy notified Nursery Decals that Neat Print had filed a complaint with Etsy, based on Nursery Decals's purported trademark infringement in listing t-shirts with the phrases "Be Nice to Me, My Wife is Pregnant" and "Man Behind the Bump." *Id.* ¶ 24. Etsy's notice was a "final warning" to Nursery Decals, which meant that the next complaint would result in Nursery Decals being banned from listing its products on Etsy. *Id.* Nursery Decals alleges, then, that it "had no choice but to remove from Etsy all listings for t-shirts that include any phrases registered by [Neat Print] as a purported trademark[.]" *Id.* This resulted in "a significant loss in sales," including those on Father's Day, for Nursery Decals. *Id.* To avoid similar problems with Amazon, Nursery Decals pulled from Amazon its t-shirts that read "Be Nice to Me, My Wife is Pregnant," "World's Okayest," "Man Behind the Bump," and "You Don't Scare Me," which it claims resulted in thousands of dollars in lost sales. *Id.* ¶ 25.

Based on these allegations, Nursery Decals brings eleven causes of action ("Claims (1)–(11)"): (1) Declaratory Judgment of Non-Infringement (35 U.S.C. § 271, 15 U.S.C. § 1114);

(2) Declaratory Judgment of Lack of Secondary Meaning; (3) Declaratory Judgment of Genericness; (4) Declaratory Judgment of Invalid Trademark Registration; (5) Declaratory Judgment of Fraud on the USPTO; (6) Cancellation of the 598 Mark; (7) Cancellation of the 597 Mark; (8) Cancellation of the 010 Mark; (9) Cancellation of the 615 Mark; (10) Tortious Interference with Existing Business Relationship under Texas law; and (11) Tortious Interference with Prospective Business Relationship under Texas law. Doc. 1, Compl., 12–20.

On August 3, 2021, the deadline for filing dispositive motions in this case, Nursery Decals and Neat Print filed cross-motions for summary judgment.[2] Nursery Decals's motion for summary judgment (Doc. 44) seeks judgment in its favor on each of the above claims. Neat Print's motion for partial summary judgment (Doc. 47) seeks judgment in its favor on Claims (5) (Fraud on the USPTO), (10) (Tortious Interference with Existing Business Relationship), and (11) (Tortious Interference with Prospective Business Relationship).

On August 30, 2021, Neat Print filed its brief in opposition to Nursery Decals's motion (Doc. 53) ("Neat Print's response"). At the same time, Neat Print filed a Covenant Not to Sue, attached as Exhibit 1-A to its Appendix in Support of its response. Doc. 54, Ex. 1-A, Covenant. Neat Print's

_____

[2] The Court refers to the documents in this case as follows: Doc. 44, Nursery Decals's Motion for Summary Judgment ("Pl.'s Mot."); Doc. 45, Nursery Decals's Brief in Support of its Motion for Summary Judgment ("Pl.'s Br."); Doc. 46, Nursery Decals's Appendix in Support ("Pl.'s App."); Doc. 47, Neat Print's Motion for Partial Summary Judgment ("Def.'s Mot. Summ. J."); Doc. 48, Neat Print's Brief in Support of its Motion ("Def.'s Br."); Doc. 49, Neat Print's Appendix in Support (Def.'s App.); Doc. 53, Neat Print's Brief in Opposition to Nursery Decal's Motion ("Def.'s Resp."); Doc. 54, Neat Print's Appendix to its Brief in Opposition ("Def.'s Resp. App."); Doc. 54, Ex. 1-A, Covenant Not to Sue, ("Covenant"); Doc. 57, Nursery Decals's Reply in Support of its Motion ("Pl.'s Reply"); Doc. 59, Neat Print's Motion to Dismiss for Want of Subject Matter Jurisdiction and Motion to Decline to Exercise Supplemental Jurisdiction ("Def.'s Mot. Dismiss"); Doc. 60, Neat Print's Brief in Support of its Motion to Dismiss ("Def.'s Br. Mot. Dismiss"). For simplicity's sake, the Court refers to the page numbers generated by the Court's ECF system when they differ from those printed on the parties' documents.

response argues that Claims (1)–(9), the declaratory judgment and cancellation claims, are mooted by the Covenant Not to Sue (Doc. 54, Def.'s Resp. App., Covenant Not to Sue, 1-A). Nursery Decals filed its reply (Doc. 57) to Neat Print's response on September 13, 2021, in part addressing and objecting to the mootness argument.

On October 1, 2021, Neat Print filed a motion to dismiss for want of subject-matter jurisdiction (Doc. 59). This motion asserts that the Court must dismiss Claims (1)–(9) for lack of subject-matter jurisdiction and should decline to exercise supplemental jurisdiction over Nursery Decals's state-law claims. Doc. 59, Def.'s Mot. Dismiss, 1–2. Nursery Decals filed a response on October 21, 2021. (Doc. 71).

The cross-motions for summary judgment are fully briefed and ripe for review. Neat Print has not yet had an opportunity to file a reply to Nursery Decal's response to the motion to dismiss. However, because Neat Print's motion to dismiss (Doc. 59) and supporting brief (Doc. 60) repeat and expand upon the jurisdictional arguments first made by Neat Print in response to Nursery Decal's motion for summary judgment (Doc. 53), and because Nursery Decals bears the burden of proof on the issue of subject-matter jurisdiction, the Court may decide the motion to dismiss without additional briefing.[3]

---

[3] "[T]he party with the burden on a particular matter will normally be permitted to open and close the briefing." *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (quoting *Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 291 (N.D. Tex. 1988)). This rule is premised on the principle that "the party who must persuade the court of the merits of the relief it seeks is almost always given the final word." *Id.* Under the circumstances presented here, the Court concludes that it may decide the motion to dismiss without waiting for Neat Print's reply, for the following reasons: First, as explained below, Rule 12(b)(1) places the burden of proof on the party who claims that subject-matter jurisdiction exists—here, Nursery Decals. *See* Section III(A). Second, the arguments presented in Neat Print's motion to dismiss mirror those Neat Print presented in its response to Nursery Decals's motion for summary judgment. *Compare* Doc. 53, Def.'s Resp., 2–3, *with* Doc. 60, Def.'s Br. Mot. Dismiss, 1–2. Because Neat Print raised the jurisdictional issue in its response and filed the motion to dismiss after Nursery Decals addressed

The Court considers the motion to dismiss for want of subject-matter jurisdiction and the parties' cross-motions for summary judgment below.

## II.

## LEGAL STANDARDS

A.    *Dismissal for Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)*

For a motion to dismiss under Rule 12(b)(1), "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "The district court has the power to dismiss [pursuant to Rule 12(b)(1)] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (alterations in original) (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)). Dismissal "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

B.    *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

the issue on reply, Neat Print has already had two opportunities to brief the Court on this issue. *See* Doc. 53, Def.'s Resp., 7–9 (raising a mootness argument based on *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ("the *Already* argument"); Doc. 57, Pl.'s Reply, 3–5 (addressing the *Already* argument); Doc. 60, Def.'s Br. Mot. Dismiss, 2–7 (expanding the *Already* argument). Therefore, the Court concludes it may decide the motion to dismiss without reply briefing.

"[T]he substantive law . . . identifies which facts are material," and only a "dispute[]over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts and the inferences drawn from the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Once the summary-judgment movant has met its burden, "the non[-]movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). A non-movant may not simply rely on the Court to "sift through the record" to find a fact issue, but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

In reviewing cross-motions for summary judgment, courts examine "each party's motion independently" and view "the evidence and inferences in the light most favorable to the non-moving party." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016) (quoting *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009)).

III.

ANALYSIS

The Court analyzes the parties' motions in the following order: first, Neat Print's motion to dismiss under Fed. R. Civ. P. 12(b)(1); second, Nursery Decals's motion for summary judgment, and; third, Neat Print's motion for partial summary judgment.

Below, the Court: first, **DENIES** Neat Print's motion to dismiss; second, **GRANTS IN PART** and **DENIES IN PART** Nursery Decals's motion for summary judgment; and third, **GRANTS IN PART** and **DENIES IN PART** Neat Print's motion for partial summary judgment.

A.   *Neat Print's Motion to Dismiss for Want of Jurisdiction Pursuant to Rule 12(b)(1) and Motion to Decline to Exercise Supplemental Jurisdiction*

The Court has previously considered the issue of subject-matter jurisdiction in this case. *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2020 WL 1819885, at *9–10 (N.D. Tex. Apr. 10, 2020). At that time, the Court concluded that the requirements for federal subject-matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, were met. *Id.*

Neat Print now states that because it recently filed a Covenant Not to Sue "the Court [now] lacks jurisdiction [over Claims (1)-(9)] pursuant to the Supreme Court's holding in *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)." Doc. 59, Def.'s Mot. Dismiss, ¶ 1. Claims (1)–(9) (the "Trademark Claims"), it argues, are mooted by the Covenant Not to Sue. Doc. 60, Br. Mot. Dismiss., 4–6. Therefore, Neat Print claims that under Article III of the Constitution Nursery Decals no longer has standing to bring the Trademark Claims and this Court lacks jurisdiction to hear them. *Id.* Further, Neat Print argues that because the Court lacks jurisdiction over the Trademark Claims it should decline to exercise supplemental jurisdiction over Claims (10) and (11) (the "Tortious Interference

-8-

Claims"). *Id.* at 7–8. In the alternative, Neat Print requests that the Court retain the Tortious Interference Claims and grant summary judgment on them for Neat Print. *Id.* at 8.

Nursery Decals responds by stating that Neat Print's new jurisdictional argument is "untimely as falling outside [the] deadline for dispositive motions."[4] Doc. 57, Pl.'s Reply, 3. Nursery Decals also points out that the facts of the *Already* case are distinguishable from the claims presented here. *Id.* at 4. Nursery Decals therefore argues that Neat Print has not carried its burden of showing that the Covenant Not to Sue makes it "'absolutely clear the alleged wrongful behavior could not reasonably be expected to occur." *Id.* at 4 (emphasis omitted) (quoting *Already*, 568 U.S. at 85). Thus, Nursery Decals asserts, the Trademark Claims are not moot. *Id.*

Below, the Court considers these arguments. First, the Court finds that Neat Print's jurisdictional argument, while late, is not untimely. Next, it finds the facts of the *Already* case distinguishable. Here, unlike in *Already*, the Covenant Not to Sue does not moot Nursery Decals's Trademark Claims. The Court therefore retains subject-matter jurisdiction over all the claims at issue and **DENIES** Neat Print's motion to dismiss.

1.      Neat Print's Jurisdictional Argument is Not Untimely

The deadline for the filing of dispositive motions in this case was August 9, 2021. Doc. 26, Am. Scheduling Order. On that date, Nursery Decals and Neat Print each filed their motions for

_____

[4] Nursery Decals further asserts that Neat Print's filing the Covenant Not to Sue "now, after almost two years of litigation, including mediation and the filing of both parties' dispositive motions, is nothing more than a vexatious litigation strategy and should not be allowed." Doc. 57, Pl.'s Reply Br., 3 (citing *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013)). Additionally, the Court notes that Nursery Decals claims that "[w]hether [Neat Print] properly filed the Covenant Not to Sue as alleged is debatable[,]" because "[Neat Print] attached the Covenant as evidence in its Appendix in Support of Opposition to Summary Judgment but failed to file the documents as stated." Doc. 57, Pl.'s Reply Br., 6 n.16. The Court does not consider these arguments at this time.

summary judgment. Doc. 44, Pl.'s Mot.; Doc. 47, Def.'s Mot. Summ. J. "[W]hile researching trademark issues in response to" Nursery Decals's motion, Neat Print "learned of" the *Already* case. Doc. 60, Def.'s Br. Mot. Dismiss, 2. On August 30, 2021, it filed a Covenant Not to Sue "patterned off of one used by Nike in *Already*" as an exhibit attached to its response to Neat Print's motion. Doc. 53, Def.'s Resp., 6; Doc. 54, Def.'s Resp. App., Ex. 1-A, Covenant, 5. The response states that: "Today, [Neat Print] filed its Covenant Not to Sue" and that as a result "[Nursery Decals's] claims for Declaratory Relief have been rendered moot," as in *Already*. Doc. 53, Def.'s Resp., 6. Nursery Decals's reply, filed September 13, 2021, objected that this new argument was untimely and could not be asserted for the first time in a response. Doc. 57, Pl.'s Reply, 3 (citing Fed. R. Civ. P. 56(a),(b)). On October 1, 2021, Neat Print filed its 12(b)(1) motion to dismiss (Doc. 59) and brief in support (Doc. 60), reasserting the *Already* argument.

"A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action." *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 639 (5th Cir. 2014), *aff'd*, 136 S. Ct. 2198 (2016)). "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Indeed, an objection to subject-matter jurisdiction "may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Id.* Therefore, it is not untimely for Neat Print to raise the issue of mootness either for the first time in its response to Nursery Decals's motion or in its motion to dismiss pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(h). So, the Court considers the merits of Neat Print's *Already* argument.

2.      The Covenant Not to Sue Does Not Moot Nursery Decals's Claims

Neat Print argues that the Covenant Not to Sue "is virtually identical to the one [filed by] Nike" in *Already*. Doc. 60, Def.'s Br. Mot. Dismiss, 3. Nursery Decals's case, it further argues, is "substantially similar to the [*Already*] case" because Nursery Decals (like Already, LLC) "sought several declarations regarding non-infringement and the validity of the Marks." Doc. 53, Def.'s Resp., 3; *see also* Doc. 60, Def.'s Br. Mot. Dismiss, 3. *Already*, Neat Print claims, is therefore "dispositive as to [Nursery Decals's] claims for declaratory relief." *Id*.

Nursery Decals replies that *Already* is distinguishable from the present case. Doc. 57, Pl.'s Reply, 4. *Already* "involved a trademark infringement lawsuit filed by Nike and the defendant's counterclaim filed for a declaratory judgment invalidating Nike's trademark registration." *Id*. (citing *Already*, 568 U.S. at 91). "Once Nike filed a covenant not to sue, Nike's trademark infringement claim, and the defendant's affirmative defense to that claim, were rendered moot as there was no longer any circumstance under which Nike could pursue similar claims without violating the broad covenant not to sue." *Id*. By contrast, "Nursery Decals does not assert infringement but seeks relief from [Neat Print's] intentional interference with Nursery Decals'[s] online accounts vis a vis false takedown notices that [Neat Print] submitted on the basis of fraudulent trademark registrations." *Id*. at 4–5. Moreover, "[a] judicial determination of non-infringement or invalidity is necessary to restore Nursery Decals'[s] standing on Etsy." *Id*. at 9. No such fact was presented in *Already*. *See* 568 U.S. at 88.

The Court agrees that the cases are both procedurally and substantively distinguishable. In *Already*, Nike demanded that shoe company Already "cease and desist its sale of" two shoe lines that Nike alleged infringed Nike's "Air Force 1" trademark. 568 U.S. at 88. "When Already refused, Nike

filed suit in federal court alleging that the [shoes]. . . infringed and diluted its . . . trademark." *Id.* Already "filed a counterclaim contending that the Air Force 1 trademark [was] invalid." *Id.* "[E]ight months after Nike filed its complaint, and four months after Already counterclaimed, Nike issued a 'Covenant Not to Sue.'" *Id.* at 88–89. "The covenant promised that Nike would not raise against Already or any affiliated entity any trademark or unfair competition claim based on any of Already's existing footwear designs, or any future Already designs that constituted a 'colorable imitation' of Already's current products." *Id.* at 89. Nike then "moved to dismiss its claims with prejudice, and to dismiss Already's invalidity counterclaim without prejudice on the ground that the covenant had extinguished the case or controversy." *Id.* "Already opposed dismissal of its counterclaim, arguing that Nike had not established that its voluntary cessation had mooted the case" and presenting evidence that: Already intended "to introduce new versions of its shoe lines into the market[,] . . . potential investors . . . would not consider investing in Already until Nike's trademark was invalidated[,] and . . . Nike had intimidated retailers into refusing to carry Already's shoes." *Id.* The district court, finding that Already had not met its burden of showing that the counterclaim was not moot, dismissed the case and the Second Circuit affirmed. *Id.* at 90.

The Supreme Court granted certiorari to consider whether the covenant not to sue satisfied the voluntary cessation doctrine and then affirmed the lower courts' decisions, stating:

> The breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test. The covenant is unconditional and irrevocable. Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim *or* any demand. It reaches beyond Already to protect Already's distributors and customers. And it covers not just current or previous designs, but any colorable imitations . . . . [I]t is hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant. Nike, having taken the position in court that there is no prospect of such a shoe, would be hard pressed to assert the contrary down the road . . . . [and] it was incumbent on Already to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the

covenant . . . .But when given the opportunity . . . Already did not assert any intent to design or market a shoe that would expose it to any prospect of infringement liability . . . .Given the covenant's broad language, and given that Already has asserted no concrete plans to engage in conduct not covered by the covenant, we can conclude the case is moot because the challenged conduct cannot reasonably be expected to recur.

*Id.* at 93–95 (quotation omitted).

As the Court stated in summary: "Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur. There being no other basis on which to find a live controversy, the case is clearly moot." *Id.* at 100.

The same cannot be said here because Neat Print's Covenant Not to Sue has not definitely eliminated Nursery Decals's past and potential future injuries. First, Nursery Decals claims a legally-cognizable injury resulting from the allegedly-tortious Etsy takedown notice. *See* Doc. 46, Pl.'s App., Ex. A-4, 74–95 (claiming actual damages). Assuming—as the court must at this stage—that a jury resolves the disputed facts in Nursery Decals's favor, Nursery Decals may have a cognizable claim for tortious interference with prospective contract under Texas law. *See infra* Section III(C)(3) (analyzing Neat Print's motion for summary judgment as to Claim (11)). The Covenant would not remove this past injury. *See Already*, 568 U.S. at 100 (explaining that Already's "only legally cognizable injury" was "the fact that Nike took steps to enforce its trademark" by sending a cease and desist letter and then filing an infringement suit).

Nor is it absolutely clear that this Covenant Not to Sue would prevent Neat Print from filing future take-down notices based on the disputed trademarks. *See Already*, 568 U.S. at 93 (explaining that Nike had demonstrated "that the covenant encompasses all of its allegedly unlawful conduct"). A take-down notice presented to a third party distributor like Etsy might be a "claim" or "demand"

within the meaning of the Covenant Not to Sue. *See* Doc. 54, Ex. 1-A, Covenant. But Nursery Decals has not unequivocally stated that the Covenant applies to take-down notices, nor does the Covenant itself include that term. *See id.* And as a four-justice concurrence noted in *Already*, the trademark holder—not the alleged infringer—must prove that the covenant not to sue is adequate to protect the alleged infringer's current and future products from enforcement action. *Already*, 568 U.S. at 104 (Kennedy, J., concurring).

Further, the *Already* court based its decision in part on the uncontested findings of fact made by the district court and confirmed by the Second Circuit, which made it "absolutely clear" that the case was moot. *See id.* at 102, 105 ("While there still may be some doubts that Nike's showing below would suffice in other circumstances, here Already's litigation stance does seem to have made further proceedings on the mootness issue unnecessary."). The procedural posture in this case does not provide the same certainty because, as the Court explains below, genuine issues of material fact remain to be resolved. If these facts are resolved in favor of Nursery Decals, it might be entitled to relief. *See Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss.*, 143 F.3d at 1010); *infra* Section III(C)(3) (analyzing Claims (5) and (11)). Under these circumstances, the Court finds that this case is not moot and should not be dismissed under Rule 12(b)(1). Therefore, the Court **DENIES** Neat Print's motion to dismiss.[5]

B.    *Nursery Decals's Motion for Summary Judgment*

Nursery Decals seeks summary judgment in its favor on each of its eleven claims. The Court considers the claims in five groups. First, Claims (1)–(4), seeking declaratory judgments related to

---

[5] Because the Court finds that the trademark-based claims are not moot, it need not reconsider its prior ruling that the Court has subject-matter jurisdiction over Nursery Decals's claims. *See Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2020 WL 1819885, at *9–10 (N.D. Tex. April 10, 2020).

the marks' classification or invalidity. Second, Claims (6)–(9) seeking cancellation of the allegedly invalid marks. Third, Claim (5), asserting that Neat Print committed fraud on the USPTO in obtaining the marks. Fourth, Claim (10), Tortious Interference with Existing Business Relationship. And fifth, Claim (11), Tortious Interference with Prospective Business Relationship. For the reasons stated below, the Court **GRANTS** summary judgment for Nursery Decals on Claims (1), (2), and (4) and Claims (6)–(9), and **DENIES** summary judgment for Nursery Decals on Claims (3), (5), (10), and (11).

    1.    <u>Declaratory Judgments (Claims 1–4)</u>

To align the Court's analysis with the order of analysis generally used in such cases, the Court discusses the claims in the following order: Claim (1), Claim (3), Claim (2), Claim (4).

    I.    *Noninfringement*

Nursery Decals's Claim (1) seeks a declaratory judgment that Nursery Decals's sale of products bearing the contested marks did not infringe any valid trademark belonging to Neat Print. Doc. 1, Compl., ¶ 28. "There are two elements to a successful infringement claim under the Lanham Act: (a) proof of 'ownership in a legally protectable mark,' and (b) proof of a likelihood of confusion." *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F. Supp. 2d 688, 695 (E.D. La. 2013) (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010)), *aff'd*, 783 F.3d 527 (5th Cir. 2015).

Nursery Decals argues that Neat Print's marks are "invalid and unprotectable" under the Lanham Act and that, as one who has been injured by an infringement claim based on the contested marks, it is entitled to declaratory relief. Doc. 45, Pl.'s Br., 18. Nursery Decals specifically argues that

the marks at issue are "generic," or in the alternative "descriptive" without secondary meaning. *Id.* 18–25.

"A valid trademark registration is *prima facie* evidence that a mark is valid and that the owner of the mark has the exclusive right to use the mark." *Nola Spice*, 969 F. Supp. 2d at 695–96 (citing *Amazing Spaces*, 608 F.3d at 237). The registration creates a "presumption of validity that . . . may be rebutted by proof that the mark is not inherently distinctive." *Id.* Here, the parties do not dispute that Neat Print successfully registered the marks at issue.[6] Therefore, the Court assumes for purposes of deciding this motion that Neat Print has made a *prima facie* showing of the marks' validity. To show that it is entitled to the requested relief as a matter of law, Nursery Decals now "[bears] the burden of proving that [Neat Print's] marks are not inherently distinctive." *Id.* at 696.

"To assess the distinctiveness of a word mark," courts in the Fifth Circuit use the test "set forth by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 537 (5th Cir. 2015). *Abercrombie* sets out five categories of trademarks: "(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Id.* "Suggestive, arbitrary, and fanciful marks are inherently distinctive," but "generic marks cannot be distinctive, and descriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Id.* (quoting *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 268 (5th Cir.1999)). To "categoriz[e] a term, [courts] must examine the context in which the term is used," including "how [the term] is used with other words, the products or services to which it is applied, and the audience to which the relevant product or service is directed." *Id.* (citing *Union Nat'l Bank*

---

[6] Nursery Decals does challenge the validity of the registration, as the Court discusses below. *See infra* Section III(B).

*of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 847 (5th Cir. 1990) (quotations omitted)). The key question is, "'[w]hat do the buyers understand by the [contested] word. . . ?'" *Id.* at 537–38 (quoting *Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y. 1921). Categorization is a factual question on which "summary judgment is rarely appropriate." *Id.* at 538 (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009)).

For the reasons discussed below, the Court concludes that Neat Print's marks are not legally protectable. Therefore, Nursery Decals is entitled to summary judgment that its products bearing these marks do not infringe any valid trademark belonging to Neat Print.[7] The Court **GRANTS** summary judgment for Neat Print on Claim (1).

### ii.    Genericness

Nursery Decals's Claim (3) asserts that Neat Print's marks are generic. "A generic term is the name of a particular genus or class of which an individual article or service is but a member." *Id.* (quoting *Amazing Spaces*, 608 F.3d at 241); *see also Xtreme Lashes*, 576 F.3d at 227 (giving the example of "eyelash extensions" as a generic term). "The test for genericness is whether the public perceives the term primarily as the designation of the article." *Id.* (quoting *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 227 (5th Cir. 1995)).

A challenger can "overcome the presumption of validity of a registered mark" by introducing evidence "includ[ing] uncontested generic use by competitors, generic use by the [markholder], dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys." *Vandling v. XRC, LLC*, 2018 WL 11361760, at *4 (N.D. Tex. May 29, 2018). In support of its claim

---

[7] Because the Court finds that the marks are not legally protectable it need not consider the likelihood of confusion. *Nola Spice*, 783 F.3d at 547 ("The district court properly pretermitted discussion of likelihood of confusion.").

that Neat Print's marks are generic, Nursery Decals offers: (1) subpoena responses showing that Neat Print's competitors Spreadshirt, Ebollo.com, and Nerdyshirt were all selling t-shirts bearing the contested marks at or before the time Neat Print registered the marks; (2) screenshots of Neat Print's product listings, with "no hang tag or other markings . . . visible on the products—just the actual slogan on the t-shirts;" (3) dictionary definitions related to the words in Neat Print's marks; and (4) evidence of media references to the slogans. Doc. 45, Pl.'s Br., 19–24.

The Court finds that Nursery Decals has not shown, as a matter of law, that the Neat Print marks function as descriptors for a class or category of products and are therefore generic. *See Vandling*, 2018 WL 11361760 at *5, 9 (finding that evidence of other medical providers, customers, and trade publications using a plaintiff's registered mark "X-RAY CE" in reference to their continuing education events created a fact issue that precluded summary judgment on the issue of whether the mark was generic); *El Chico Rests. of Tex., Inc. v. Mexican Inn Ops. No. 2, Ltd.*, 2012 WL 1081464, at *6, 9 (N.D. Tex. Mar. 30, 2012) (finding that evidence that a plaintiff's registered mark "'Casa Rita,' translated from Spanish to English, means 'house rita' or 'house margarita,' and is generic for prepared alcoholic drinks, which includes margaritas" created a fact issue that precluded summary judgment on the issue of whether the mark was generic).

Therefore, the Court **DENIES** summary judgment for Nursery Decals on Claim (3).

  ii. *Descriptiveness*

Nursery Decals's Claim (2) seeks a declaratory judgment that Neat Print's marks are descriptive without secondary meaning. "A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Nola Spice*, 783 F.3d at 539 (emphasis omitted) (quoting *Amazing Spaces*, 608 F.3d at 241). "[T]he concept of

descriptiveness must be construed rather broadly." *Id.* (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792 (5th Cir. 1983), *abrogated on other grounds, KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)). One key consideration of whether a mark is descriptive is "the 'imagination test,' which 'seeks to measure the relationship between the actual words of the mark and the product to which they are applied.'" *Id.* Where a word requires no imagination "to apply it to the product or service in question" but merely "conveys information about the product, it is descriptive." *Id.* (quoting *Union Nat'l Bank of Tex.*, 909 F.2d at 848). Courts may also consider "whether competitors would be likely to need the terms used in the trademark in describing their products." *Firefly Digit. Inc. v. Google Inc.*, 817 F. Supp. 2d 846, 862 (W.D. La. 2011) (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d at 116–17 (5th Cir. 1979)).

To show that the marks are descriptive, Nursery Decals points to prior USPTO Office Actions rejecting Neat Print's applications to register similar marks "based on identical use in commerce." Doc. 45, Pl.'s Br., 24–25 & n.100 (citing to Doc. 46-4, Pl.'s App., Ex. M, 3, 61, 112–3). The USPTO found that the marks were "slogan[s] or term[s] that [are] widely used in the marketplace to merely convey information about applicant's or similar goods or services" and therefore were not protectable. *Id.* Nursery Decals also presents evidence that others in the market commonly use these slogans on their t-shirts, that shirts bearing the slogans were common in the marketplace before and after Neat Print's marks were issued, and that Neat Print's products are simply t-shirts that feature the slogans. *E.g.*, Doc. 46-5, Ex. P, 5–70; Doc. 46-5, Ex. Q, 82–88, 120–136; Doc. 46-1, Ex. B, 119–190 (showing Neat Print's products).

While classification is generally a fact issue, a court may properly grant summary judgment where—as here—no reasonable juror could fail to conclude that a mark is descriptive. *Compare Nola*

-19-

*Spice*, 783 F.3d at 539 (finding that "[n]o reasonable juror could find that imagination is required to link" products that featured a dog made of twisted Mardi Gras beads with the contested word mark MARDI GRAS BEAD DOG), *with Xtreme Lashes*, 576 F.3d at 231 (citing *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs, Inc.*, 41 F.3d 223, 226 (5th Cir. 1995)) (reversing a district court's grant of summary judgment where the evidence that a mark was descriptive without secondary meaning was not so clear that the outcome was "preordained").

Here, Nursery Decals's uncontroverted evidence clearly shows that the marks "identif[y] . . . a characteristic or quality of an article": the words printed on the front of each t-shirt. *C.f. Nola Spice*, 783 F.3d at 539 ("The bead dog design embodied in . . . [defendant's] products is 'a rendering of the old time bead dog.'"). Neat Print's contested marks accordingly "convey[] information about [Neat Print's] product": the slogan featured on the shirt. *See id.* Indeed, the slogan is the main, if not sole, identifying feature of each shirt. *See* Doc. 46, Pl.'s App., 101–05. The words of the slogan are the entirety of each mark. *See, e.g.*, Doc. 49, Def.'s App., 146 ("The [BE NICE TO ME MY WIFE IS PREGNANT] mark consists of standard characters without claim to any particular font, style, size, or color."). No imagination is therefore required to link Neat Print's word marks—for example, THE MAN BEHIND THE BUMP—with a t-shirt bearing those exact words. *See Nola Spice*, 783 F.3d at 539 (finding that no reasonable juror could find that imagination was required to link MARDI GRAS BEAD DOG with clothing bearing an image of a Mardi Gras bead dog); *c.f. Xtreme Lashes*, 576 F.3d 221 (finding that a "customer must exercise some imagination to associate 'xtreme lashes' with 'artificially elongated eyelashes,'" and emphasizing that the XTREME LASHES mark "uses a misspelling of the word 'extreme' and a stylized eyelash forms part of the 'X'"). And, "common sense indicates that other vendors would need to use these terms" to describe their own shirts bearing the

same common slogans. *See Nola Spice*, 783 F.3d at 539–40 (noting that other purveyors of Mardi Gras items would likely need to use the term MARDI GRAS BEAD DOG).

Moreover, Nursery Decals's evidence clearly shows that the USPTO, considering other similar slogans for which Neat Print sought registration and which were used in exactly the same manner in commerce, found such slogans descriptive and not protectable. Doc. 45, Pl.'s Br., 24–25 & n.100 (citing to Doc. 46-4, Pl.'s App., Ex. M, 3, 61, 112–13) (noting that "[r]egistration is refused because the applied-for mark . . . is a slogan or term that is widely used in the marketplace to merely convey information about applicant's or similar goods").

Taken together, this evidence is such that no reasonable juror could conclude that the Neat Print marks are anything other than descriptive of the slogans displayed on the items of clothing.

###### iii.   *Secondary Meaning*

"Secondary meaning occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Nola Spice*, 783 F.3d at 543 (quoting *Amazing Spaces,* 608 F.3d at 247). The markholder bears the burden of proof on the question of whether secondary meaning exists. *See id.* ("Because Nola Spice has demonstrated that Haydel's marks are descriptive, rebutting the presumption of inherent distinctiveness arising from Haydel's registrations, Haydel bears the burden of establishing secondary meaning[.]"). "In the summary judgment context," this means the challenging party "may merely point to an absence of evidence of secondary meaning . . . shifting to [the markholder] the burden of demonstrating by competent summary judgment proof that there is a genuine issue of fact warranting trial." *Id.* (citing *Transamerica Ins. Co v. Avenell.*, 66 F.3d 715, 718–19) (5th Cir. 1995)).

Here, Nursery Decals claims that the contested marks have no secondary meaning and are instead phrases that "are widely and commonly used in the novelty t-shirt industry" and thus "understood not as an indicator of source . . . but . . . as merely conveying support or affinity for [a] common expressive sentiment." Doc. 45, Pl.'s Br., 25 (quotation marks omitted). Neat Print, Nursery Decals emphasizes, "does not dispute that there is nothing in the specimens [Neat Print] submitted to the USPTO . . . that identifies Neat Print or otherwise points to Neat Print as the source of the goods." *Id*. Nor did Neat Print substantively respond to the secondary meaning arguments Nursery Decals presented in its summary-judgment motion. Doc. 57, Pl.'s Reply, 6. "Accordingly, the Court should accept Nursery Decals'[s] evidence and arguments" regarding the lack of secondary meaning as "undisputed and grant summary judgment in Nursery Decals'[s] favor on [this] claim[]." *Id*.

Neat Print's Response does not address the issue of secondary meaning but merely asserts that Nursery Decals's declaratory judgment claims are moot. *See* Doc. 50, Def.'s Mot. Summ. J. Nor has Neat Print otherwise provided specific evidence of secondary meaning, such as "(1) length and manner of use of the mark . . . , (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark . . . in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the . . . [mark]." *See  Nola Spice*, 783 F.3d at 544 (alteration in original) (quoting *Amazing Spaces*, 603 F.3d at 248). Examining the record, the Court finds evidence showing that Neat Print has sold shirts and other products bearing the marks since at least 2014, which goes to Neat Print's length of use of the marks. *See* Doc. 46-1, Pl.'s App., Ex. B. But the record also shows that Neat Print's competitors were using the marks throughout this time and perhaps before Neat Print, which means that Neat Print's duration of use alone does not raise a fact issue as to secondary meaning. *See Nola Spice*, 783 F.3d at 544 (finding

that a markholder's evidence that it used the MARDI GRAS BEAD DOG mark for three-and-a-half years before its competitor started selling its allegedly infringing products "does not alone raise a factual issue for trial with respect to secondary meaning"). Nor has Neat Print provided financial records, advertising evidence, or consumer surveys to show that the public actually associates Neat Print as the source of goods bearing the contested marks. *See id.* at 546–47 (finding that the district court properly granted summary judgment on the issue of secondary meaning where the markholder presented financial records showing the money it spent to advertise the mark and media coverage of promotional efforts associated with the mark, but did not show that the campaigns actually resulted in the public associating the mark with the markholder).

Accordingly, Neat Print has not carried its burden of showing that the marks have secondary meaning. The Court therefore **GRANTS** summary judgment for Nursery Decals on Claim (2).

> iv.    *Invalidity*

Nursery Decals's Claim (4) seeks a declaratory judgment that the Neat Print marks are invalid. As discussed above, Neat Print's marks are descriptive and do not have secondary meaning. "[D]escriptive marks are distinctive only if they have acquired 'secondary meaning.'" *Nola Spice,* 783 F.3d at 537. And only a "distinctive" mark is legally protectable. *Id.*

Therefore, the Court finds that Neat Print's marks are not legally protectable. So, the Court **GRANTS** summary judgment for Nursery Decals on Claim (4).

To summarize, the Court finds that Neat Print's marks are descriptive and do not have secondary meaning. So, the four marks are not legally protectable and are invalid. Nursery Decals's products therefore did not infringe any valid mark belonging to Neat Print. So, the Court **GRANTS**

summary judgment on Claims (1), (2), and (4). Because the marks are descriptive, they are not generic. The Court therefore **DENIES** summary judgment on Claim (3).

### 2. Cancellation (Claims 6–9)

Nursery Decals presents the following cancellation claims: (6) Cancellation of the 598 Mark; (7) Cancellation of the 597 Mark; (8) Cancellation of the 010 Mark; and (9) Cancellation of the 615 Mark. Doc. 1, Compl., 16–18.

A party who claims that a trademark registration is invalid or was fraudulently obtained may petition a district court for cancellation of the mark. *See* 15 U.S.C. § 1115(b)(1); *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props. Inc.*, 616 F. Supp. 2d 622, 644 (N.D. Tex. 2009). Nursery Decals argues that "given the generic or descriptive nature of [Neat Print's] marks without secondary meaning, and based on [Neat Print's] fraud on the USPTO in connection with the . . . registration of these marks," the Court should order each disputed marks' cancellation. Doc. 45, Pl.'s Br., 38–39.

Because the Court finds above that the marks are not legally protectable, the Court finds the marks should be cancelled. Therefore, the Court **GRANTS** summary judgment for Nursery Decals on these claims and **ORDERS** the USPTO to cancel (6) the 598 Mark; (7) the 597 Mark; (8) the 010 Mark; and (9) the 615 Mark.

### 3. Fraud (Claim 5)

Nursery Decals's Claim (5) seeks a declaratory judgment that Neat Print committed fraud on the USPTO in applying for and registering the contested marks. "To prove fraudulent procurement of a trademark, a party must show: 1) the false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false (scienter); 3) the intention to induce action or refraining from action in reliance on the misrepresentation; 4) reasonable reliance

on the misrepresentation; and 5) damages proximately resulting from such reliance." *Tex. Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 592 (N.D. Tex. 2009). The party claiming fraud "must prove by clear and convincing evidence that [the trademark applicant] made false statements with intent to deceive the USPTO." *Id.* (citing *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir.1993)).

Nursery Decals claims that Neat Print's applications for the marks at issue (1) falsely represented that the t-shirts were being sold with hang tags bearing the marks (and therefore that the marks were serving as an identifier of the goods' source), (2) falsely represented that no other persons had the right to use the mark in commerce, and (3) falsely represented that Neat Print's then-owner, Denny Raca, reasonably believed that the marks were protectable. Doc. 45, Pl.'s Br., 25–30. Neat Print claims that "Mr. Raca knew that the specimens he submitted to the PTO did not show the marks as used on [the] goods in commerce," that Mr. Raca has no evidence to corroborate his testimony that the goods were ever sold with hang tags, and that Mr. Raca has no evidence to corroborate his testimony that he did not falsely tell the USPTO that he had conducted searches sufficient to qualify as a reasonable inquiry into others' rights to use the marks and had evidentiary support to show he had made such searches. *Id.* at 27–30.

In support of these claims, Nursery Decals offers evidence that the PTO rejected another Neat Print application, for the mark "'SOON TO BE,' submitted just days after the marks at issue here, and relying on the same hang tag, which the USPTO determined was false and rejected the application due to a 'digitally altered image' of the hang tag, which the USPTO concluded had been photo-shopped." *Id.* at 28 n.118 (citing Doc. 46, Pl.'s App., Exs. D, EE). Nursery Decals also offers Google search results from January 1, 1980, through July 7, 2014, "demonstrat[ing that] countless

-25-

others . . . were using the phrases in commerce–including known competitors in the novelty t-shirt industry–long before any claimed first use of the phrases by Neat Print," and responses from market competitors showing that they did, in fact, use the contested marks in commerce before Neat Print submitted its applications. *Id.* at 29; *see also* Doc. 46, Pl.'s App., Exs. O, P, Q, R, W, X, Y. Nursery Decals also points to Mr. Raca's testimony that he did not search Etsy or Amazon for similar products before submitting the applications and did not retain any evidence of his Google searches. Doc. 45, Pl.'s Br., 29–30. Additionally, Nursery Decals provided evidence of historic sales for the items in question to show that it was damaged by the allegedly fraudulent registrations, which allowed Neat Print to send the Etsy take-down notice. *Id.* at 30.

Neat Print responds by emphasizing the scienter requirement for a fraud claim under the Lanham Act. *See* Doc. 53, Def.'s Resp., 10–11. The oath that an applicant makes in connection with a trademark submission, Neat Print argues, is "'phrased in terms of a subjective belief, such that it is difficult, if not impossible, to prove objective falsity and fraud so long as the affiant or declarant has an honestly held, good faith belief.'" *Id.* at 10 (emphasis omitted) (quoting *Maids to Order of Ohio, Inc. v. Maid-to-Order, Inc.*, 78 U.S.P.Q.2d 1899 (T.T.A.B. 2006)). Nursery Decals, Neat Print claims, "has no evidence to contradict the testimony from Mr. Raca that he sold the products with hang tags attached at the time the Marks were being prosecuted." *Id.* at 11. Neat Print further argues that Nursery Decals's 1980 to 2014 Google search results are unauthenticated and therefore inadmissible. *Id.*

The Court finds there is a genuine issue of material fact as to whether Neat Print fraudulently obtained the marks at issue. Assuming without deciding that the unauthenticated 1980 to 2014 Google search results are inadmissible, the subpoena results and PTO action letter rejecting the

-26-

"SOON TO BE" mark are admissible. The subpoena responses show that competitors were using the marks in commerce before the time of application, creating a fact issue regarding whether Mr. Raca knew of others who had the right to use the marks in commerce. *See* Doc. 47, Pl.'s Exs. O, P, Q. The PTO's rejection of the similar "SOON TO BE" mark (filed just four days after the contested marks) on the basis of what the PTO said appeared to be a digitally altered hang tag creates a fact issue regarding whether the specimens submitted accurately reflected the goods in commerce and whether Mr. Raca had a good faith belief that the marks were protectable. *See id.*, Ex. J. However, Mr. Raca's testimony that he had a good faith belief that the marks were registrable and that the specimens submitted accurately reflected the goods in commerce at the time of the application is admissible evidence to the contrary. *See* Doc. 49, Def.'s App., 7–10. Therefore, the Court **DENIES** summary judgment on this claim.

        4.      <u>Tortious Interference (Claims 10 and 11)</u>

Nursery Decals asserts two claims for tortious interference under Texas law: Claim (10) Tortious Interference with Existing Business and Claim (11) Tortious Interference with Prospective Business Relationship. Nursery Decals states that it has adequately established each element of these claims, which are both premised on Neat Print's act of allegedly fraudulently obtaining a trademark registration that it then wielded as a basis for take-down notices. Doc. 57, Pl.'s Reply, 9–11. Neat Print disputes that it committed any tortious act, as it was legally justified in seeking to enforce its registered trademarks through take-down notices. Doc. 53, Def.'s Resp., 13.

The Court discusses these claims fully below when considering Neat Print's cross-motion for summary judgment. For the reasons there stated, the Court finds that Nursery Decals is not entitled to summary judgment on either the Tortious Interference with Existing Business Relationship (10)

or Prospective Business Relationship (11) claims. Therefore, the Court **DENIES** summary judgment for Nursery Decals on these claims.

C.    *Neat Print's Motion for Summary Judgment*

Neat Print moves for partial summary judgment on the following claims: (5) Declaratory Judgment of Fraud on the USPTO; (10) Tortious Interference with Existing Business Relationship under Texas law; and (11) Tortious Interference with Prospective Business Relationship under Texas law. Doc. 47, Def.'s Mot Summ. J., 1–2. Neat Print first argues that Claim (5) (Fraud on the USPTO) "fails as a matter of law because [Nursery Decals] has no clear and convincing evidence that [Neat Print] committed fraud on the USPTO when it registered the four . . . marks at issue." *Id.* at 1. Neat Print next argues that claims (10) (Tortious Interference with Existing Business Relationship) and (11) (Tortious Interference with Prospective Business Relationship) "fail as a matter of law because [Neat Print's] alleged[ly tortious] acts are legally justified" and "because [Nursery Decals] has no competent evidence of damages and has not designated an expert to testify as to damages." *Id.* at 1–2. Neat Print then claims that the tortious interference with current business relationship claim fails for lack of evidence that Neat Print "induced a third party to breach a contract with [Nursery Decals]." *Id.* at 2. Finally, Neat Print claims that the tortious interference with prospective business relationship fails because Nursery Decals "cannot prove that [Neat Print's] conduct was independently tortious." *Id.*

Nursery Decals responds that its evidence "[a]t a minimum . . . demonstrates a genuine issue of material fact regarding exactly what Mr. Raca knew when he submitted the subject applications to the USPTO." Doc. 50, Pl.'s Resp., 2. It states that Neat Print has not carried its burden of proving that it was legally justified in sending the take-down notices to Etsy, which action forms the basis of

the tortious interference claims. *Id.* at 2–3. Nursery Decals also claims that "Texas law allows a tortious interference claim related to an at will contract" like the ones Nursery Decals had with Etsy and Amazon and that an "independently tortious act" is not required for an existing contract interference claim. *Id.* at 3–4. Moreover, Nursery Decals states that Neat Print "knew that its takedown notice to Etsy would result in the immediate removal of Nursery Decals'[s] listings from that platform" and from Amazon. *Id.* at 3. Therefore, Nursery Decals reasons, its evidence at minimum creates a fact issue as to whether Neat Print "willfully and intentionally interfered with" Nursery Decals's contracts with Etsy and Amazon, precluding summary judgment for Neat Print on Claim (10). *Id.* Finally, Nursery Decals argues that it has submitted evidence on each element of its tortious interference with prospective business relationship claim, including damages, such that Neat Print is not entitled to summary judgment on claim (11). *Id.* at 4–5.

The Court considers each of Neat Print's claims in turn.

#### 1.   Fraud (Claim 5)

As the Court has explained when considering Nursery Decals's motion for summary judgment on Claim (5), a genuine issue of material fact exists about whether Mr. Raca knew that the specimens he submitted to the PTO did not reflect the marks' actual use in commerce, and whether Mr. Raca had a good faith belief in the propriety of his application for the marks. *See supra* Section III(B)(3). So, the Court **DENIES** summary judgment for Neat Print on the fraud claim.

#### 2.   Tortious Interference (Claims 10 and 11)

Texas law recognizes "two types of tortious-interference claims: one based on interference with an existing contract and one based on interference with a prospective business relationship." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). Both claims require a

plaintiff to prove: (1) a willful and intentional act of interference with the contract or prospective business relationship, (2) that proximately caused the plaintiff's injury, and (3) caused actual damages or loss. *See Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (listing the elements of tortious interference with an existing contract); *WickFire, L.L.C. v. Woodruff,* 989 F.3d 343, 356 (5th Cir. 2021) (listing the elements of the interference with prospective business relationship cause of action under Texas law). In addition, tortious interference with an *existing* business relationship requires a finding that "the defendant's conduct resulted in 'some obligatory provision of a contract having been breached.'" *Wickfire*, 989 F.3d at 354 (quoting *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 749 (5th Cir. 2019) (quoting *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361 (Tex. App.—Houston [1st Dist.] 2013, pet. denied))). While tortious interference with a *prospective* business relationship requires findings that "there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party . . . [and] the defendant's conduct was independently tortious or unlawful." *Id.* at 356 (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

> i.    *Amazon existing (Claim 10) and prospective (Claim 11) business relationship*

First, the Court finds that Nursery Decals has not adequately alleged any act by Neat Print that caused Nursery Decals to remove the products from Amazon. Nursery Decals admits that Neat Print never submitted a take-down notice to Amazon. *See* Doc. 50, Pl.'s Resp., 3. While Nursery Decals claims that Neat Print knew that a take-down notice sent to Etsy would result in Nursery Decals removing the same items from Amazon, *id.*, Nursery Decals voluntarily removed the allegedly infringing products from Amazon to preempt the risk that an Amazon takedown notice might pose.

*See id.* Therefore, the Court **GRANTS** summary judgment to Neat Print on Nursery Decals's Claims (10) and (11) for the Amazon listings.

ii.    *Etsy existing business relationship (Claim 10)*

Neat Print argues that the Etsy contract cannot be interfered with as a matter of law." Doc. 48, Pl.'s Br. Mot. Summ. J., 15. Because "Etsy has the unilateral right to cancel [Nursery Decals's] service at any time," the take-down notice provoked no breach of Etsy's contract with Nursery Decals. *Id*. at 16–17. Nursery Decals responds that under Texas law an "at-will contract" like the one Nursery Decals had with Etsy will support a tortious interference claim, and that Neat Print "knew that its challenge to . . . listings on one platform likely would result in the removal of those listings on other platforms" including Amazon. Doc, 50, Pl.'s Resp., 2–3.

The Court agrees with Neat Print that Nursery Decals's claim for tortious interference with existing business relationship fails as a matter of law because the Etsy take-down notice did not induce Etsy to breach any obligatory provision of its contract with Nursery Decals. *C.f. Murphy*, 518 S.W.3d at 421–22 (Tex. 2017) (finding that a doctor could not claim that a medical group tortiously interfered with the doctor's employment contract with a hospital, when the contract promised to pay the doctor for shifts worked but did not guarantee the hospital would schedule the doctor for any shifts); *Unicorn Glob., Inc. v. Golabs, Inc.*, 2019 WL 6118402, at *2 (N.D. Tex. Nov. 18, 2019) (analogizing a seller's agreement with Amazon to the employment contract in *Murphy*). Nursery Decals admits that its contract with Etsy permitted Etsy to delist Nursery Decals or any of its products at Etsy's sole discretion and without advance notice. Doc. 46, Pl.'s App., Ex. A., Decl. of Cherie Woodward, ¶ 3. The agreement between Etsy and its users, including Nursery Decals, therefore does not impose a duty on Etsy to sell any specific quantity of Nursery Decals's products

or to sell Nursery Decals's products at all. *See* Doc. 46, Pl.'s App., Ex. A-1, Etsy Policies. So, Nursery Decals has not shown that Neat Print's letter provoked a breach of an existing contract. Thus, the Court finds that Nursery Decals's claim for tortious interference with an existing contract with Etsy fails as a matter of law. The Court **GRANTS** summary judgment for Neat Print on this claim.

iii.     *Etsy prospective business relationship (Claim 11)*

Neat Print argues that Nursery Decals has not shown that Neat Print's submitting of a takedown notice to Etsy was independently tortious. Doc. 48, Def.'s Br. Mot. Summ. J., 17. Nor has Nursery Decals presented competent evidence of its actual damages, Neat Print claims. *Id.* at 19. Nursery Decals responds that the take-down notice was independently tortious because it was based on the allegedly fraudulent registrations. Doc. 50, Pl.'s Resp., 4. Nursery Decals further argues that it has provided competent evidence of damages as calculated by its sole owner and President, Cherie Woodward and that Woodward, as a lay person qualified to testify about these damages, need not have been designated as an expert. *Id.* at 5.

As discussed above, Nursery Decals has established a genuine issue of material fact as to whether Neat Print fraudulently obtained the four registrations. If a jury resolved this question in Nursery Decals favor, finding that Mr. Raca did knowingly and fraudulently obtain the registrations, it could likewise reasonably find that Neat Print intentionally sent a take-down notice it knew to be fraudulently procured—arguably an independently tortious act. Therefore, the Court concludes that Neat Print has not established that this element fails as a matter of law.

Likewise, Neat Print has not shown that Nursery Decals's evidence of actual damages is incompetent as a matter of law. "To recover lost profits under Texas law, a party. . . must show the amount of profits lost 'by competent evidence with reasonable certainty.'" *WickFire*, 989 F.3d at

357(quoting *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994)). To be reasonably certain, "'opinions or estimates of lost profits must [at a minimum] be based on objective facts, figures, or data from which the amount of lost profits may be ascertained.'" *Id.* (quoting *Szczepanik*, 883 S.W.2d at 649). The plaintiff must provide sufficient evidence as to the basis of the damages and the method of calculation. *See id.* (finding an expert's testimony insufficient where he testified that he "quantified the damages by calculating the amount of profits . . . lost because of the six-month delay" but did not provide a basis for the data or specify his method of calculating the damages based on that data). Ultimately, "uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery," and the inquiry is fact intensive. *Id.* (quoting *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 280 (Tex. 2015)).

Here, Nursery Decals has provided a spreadsheet documenting its "forecasted lost profits." Doc. 46, Pl.'s App., Ex. A-4, 74–95. The spreadsheet provides some data about past sales for each disputed product, breaks out the Etsy sales from the Amazon sales, and shows the estimated sales numbers on which the damages model is based. *Id.* Further, Nursery Decals has explained the method by which it estimated its damages, either by using Excel's "forecast linear model" or by applying a specified multiplier to the past sales data. *Id.* at 93; Doc. 46, Pl.'s App., Ex. A, Decl. of Cherie Woodward, ¶ 6 (stating that Nursery Decals applied "a 1.2 multiplier of prior sales for non-peak months . . . and a 1.5 multiplier of prior sales for peak months," or used the forecast.linear function). While these methods may result in "uncertainty as to the amount" of the damages to which Nursery Decals would be entitled, there is not such "uncertainty as to the fact of legal damages" that this element is "fatal to recovery." *See WickFire*, 989 F.3d at 357.

Therefore, the Court **DENIES** summary judgment for Neat Print on this claim, as to the Etsy-based prospective business relationships.

## IV.

## CONCLUSION

In summary, the Court **DENIES** Neat Print's Motion to Dismiss (Doc. 59).

The Court **GRANTS IN PART** and **DENIES IN PART** Nursery Decals's Motion for Summary Judgment (Doc. 44). Specifically, the Court:

- **GRANTS** summary judgment for Nursery Decals on Claims (1) (Noninfringement), (2) (Secondary Meaning), and (4) (Invalidity); and therefore

- **DECLARES** that the contested marks are descriptive without secondary meaning and therefore not legally protectable under the Lanham Act.

- **GRANTS** summary judgment on Claims (6)–(9); and therefore

- **ORDERS** the USPTO to cancel (6) the 598 Mark; (7) the 597 Mark; (8) the 010 Mark; and (9) the 615 Mark; and

- **DENIES** summary judgment for Nursery Decals on Claims (2) (Declaration of Genericness), (5) (Fraud on the USPTO), and (10) and (11) (Tortious Interference).

The Court **GRANTS IN PART** and **DENIES IN PART** Neat Print's Motion for Partial Summary Judgment (Doc. 47). Specifically, the Court:

- **DENIES** summary judgment for Neat Print on Claim (5) (Fraud on the USPTO);

- **GRANTS** summary judgment for Neat Print on Claim (10) (Tortious Interference with Existing Business Relationship) as to both Etsy and Amazon; and

- **GRANTS** summary judgment for Neat Print on Claim (11) (Tortious Interference with Prospective Business Relationship) as to Amazon but **DENIES** summary judgment for Neat Print on Claim (11) as to Etsy.


SO ORDERED.

SIGNED: October 22, 2021.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE