UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NURSERY DECALS AND MORE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2606-B |
| | § | |
| NEAT PRINT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Neat Print, Inc. ("Neat Print")'s Motion for Reconsideration (Doc. 99). For the reasons stated below, the Court **DENIES** the motion.

## I.

## BACKGROUND

A.  *Factual Background*

This is a case about trademarks, take-down notices, and online sellers of novelty t-shirts. The Court's two prior decisions in this case have thoroughly presented the facts giving rise to this action and the Court will not repeat those recitations here. *See Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2020 WL 1819885, at *1 (N.D. Tex. April 10, 2020); *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2021 WL 4942192, at *1 (N.D. Tex. Oct. 22, 2021). Briefly, On November 3, 2019, Plaintiff Nursery Decals and More, Inc. ("Nursery Decals"), an online seller of products including t-shirts bearing funny words and phrases, filed this suit against a rival online seller, Neat Print. *See* Doc. 1, Compl., ¶¶ 1–2, 7–8. Nursery Decals claimed that Neat Print (1) fraudulently obtained registrations

- 1 -

for four purported trademarks—"BE NICE TO ME, MY WIFE IS PREGNANT," "THE MAN BEHIND THE BUMP," "YOU CAN'T SCARE ME," and "WORLD'S OKAYEST"—from the United States Patent and Trademark Office ("USPTO") (hereinafter the "fraud on the USPTO claim") and then used those registrations to (2) tortiously interfere with Nursery Decals's prospective relationships with potential customers by sending take-down notices to online marketplace Etsy (hereinafter the "state-law tortious interference claim").[1] *See id.*, Compl., ¶¶ 39–42, 60–62, 64–67. Nursery Decals sought declaratory and injunctive relief, including declarations of invalidity and noninfringement and cancellation of the marks, as well as compensatory and exemplary damages. *See id.* at 21–23.

B.  *The Court's Memorandum Opinion and Order of October 22, 2021*

On August 3, 2021, the deadline for filing dispositive motions, Nursery Decals and Neat Print filed cross-motions for summary judgment. *Nursery Decals*, 2021 WL 4942192, at *2. Nursery Decals's summary-judgment motion sought judgment on all claims, and Neat Print's summary-judgment motion sought judgment on the fraud on the USPTO and state-law tortious interference claims. *Id.* at *8, *14. On August 30, 2021, Neat Print filed a response to Nursery Decals's motion and attached a Covenant Not to Sue as Exhibit 1-A to its Appendix in Support of that response. Doc. 54, Ex. 1-A, Covenant. The response argued that all of Nursery Decals's declaratory judgment and trademark cancellation claims were mooted by this Covenant Not to Sue because the Covenant

---

[1] Nursery Decals's Complaint also presented a claim for tortious interference with existing contract based upon its status as a seller on online marketplaces Etsy and Amazon, and included tortious interference with prospective contract claims based upon potential sales to customers on Amazon. *See* Doc. 1, Compl., ¶¶ 60–61, 64–66. The Court granted summary judgment for Neat Print on these claims. *Nursery Decals*, 2021 WL 4942192, at *17.

precluded any future harm to Nursery Decals from Neat Print's assertion of the allegedly-invalid marks, per the Supreme Court's holding in *Already, LLC v. Nike, Inc*. *See* 2021 WL 4942192, at *3 (citing *Already, LLC v. Nike Inc.*, 568 U.S. 85 (2013)). Therefore, Neat Print claimed, there was no live case or controversy regarding the trademark declaration and cancellation claims and this Court lacked jurisdiction to hear them. *Id*. Nursery Decals timely replied to this argument. *See generally* Doc. 57, Pl.'s Reply. On October 1, 2021, Neat Print filed a motion to dismiss for want of subject-matter jurisdiction, re-urging the *Already* mootness argument. *See generally*, Doc. 59, Def.'s Mot. Dismiss. Nursery Decals responded to this motion on October 21, 2021. *See generally*, Doc. 71, Pl.'s Response Mot. Dismiss.

With the case set for trial beginning November 15, 2021, and considering that, at this point, Neat Print and Nursery Decals had each had two bites at asserting and responding to the *Already* mootness argument, the Court determined it could decide the issues presented in the summary-judgment motions and motion to dismiss without waiting for Neat Print's reply to the latter motion. *Nursery Decals*, 2021 WL 4942192, at *3 n.3. Accordingly, on October 22, 2021, the Court issued its Memorandum Opinion and Order (1) denying Neat Print's motion to dismiss for want of subject-matter jurisdiction, (2) granting summary judgment for Nursery Decals on some of its trademark declaratory-judgment claims and ordering cancellation of the disputed marks, (3) granting summary judgment for Neat Print on some of the claims, and (4) denying summary judgment for both parties on the fraud on the USPTO and state-law tortious interference with prospective business relationship claims. *Id.* at *17.

In regard to the *Already* mootness argument, the Court gave two reasons why the Covenant

Not to Sue did not moot Nursery Decals's claims for trademark declaratory judgments and cancellation. *Id.* at *7. First, "Nursery Decals claim[ed] a legally-cognizable injury resulting from the allegedly-tortious Etsy take-down notice," a past-injury arising from the trademark claims that was not eliminated by Covenant Not to Sue. *Id.* Second, it was not "absolutely clear that [the] Covenant Not to Sue would prevent Neat Print from filing future take-down notices based on the disputed trademarks" because "[Neat Print had] not unequivocally stated that the Covenant applies to take-down notices, nor [did] the Covenant itself include that term." *Id.*

C.    *The Updated Covenant Not to Sue*

On October 22, 2021, just nine minutes before the clerk's office finished processing and electronically filed the Court's above-referenced Memorandum Opinion and Order, Neat Print electronically filed a reply to its motion to dismiss for want of subject-matter jurisdiction. *See* Notice of Elect. Filing, Doc. 72, Def.'s Mot. Dismiss Reply Br. (noting that "[t]he following transaction was entered by [Defendant] on 10/22/2021 10:04 AM CDT and filed on 10/22/2021"); Notice of Elect. Filing, Doc. 73, Mem. Op. & Order (noting that "[t]he following transaction was entered on 10/22/2021 10:13 AM CDT and filed on 10/22/2021"). Attached as Exhibit A to the reply was an "Updated Covenant Not to Sue" ("Updated Covenant"). Doc. 72-1, Updated Covenant Not to Sue. The Updated Covenant added the following language: "NEAT PRINT will not send any more 'takedown' or infringement notices relative to the MARKS to Amazon, Etsy, or any other marketplace (online or physical) for any products now or in the future sold by NURSERY DECALS." *Id.* Neat Print's reply argued that "[w]hile Defendant believe[d] that the initial covenant [was] legally sufficient to require dismissal for want of jurisdiction, . . . to ensure that Plaintiff's trademark

claims with respect to the marks at issue are mooted" it had "expanded the covenant to specifically reference takedown notices and extend the covenant to Plaintiff's future products and customers." Doc. 72, Def.'s Mot. Dismiss Reply Br., 3.

D.     *The Motion for Reconsideration*

Nearly six weeks later, the afternoon before the pretrial conference and jury selection,[2] Neat Print filed a Motion for Reconsideration and Brief in Support and Request for Expedited Consideration, moving "the Court to reconsider portions of its Memorandum Opinion and Order [D.E. 73]" and "request[ing] expedited consideration in light of the current trial setting." Doc. 99, Mot. Recon., 1. In the motion, Neat Print argued that the Updated Covenant—by making it absolutely clear that it applied to take-down notices—addressed one of the Court's two reasons why the original Covenant did not moot Nursery Decals's claims. *Id.* at 4. Neat Print further argued that, as a matter of law, fraud on the USPTO could not support a claim for tortious interference with prospective business relationship under Texas law, such that Nursery Decals had no legally cognizable past injury. *Id.* at 8.

The Court heard argument on the motion during the pretrial conference on December 3, 2021. *See* Doc. 108, Order, 3. At the conclusion of the pretrial conference, the Court **DENIED** the Motion for Reconsideration and stated that a Memorandum Opinion and Order memorializing the ruling would follow after trial. *Id.* The Court explains its reasons below.

---

[2] On November 9, 2021, trial was reset to begin on Monday, December 6, 2021, with jury selection occurring on Friday, December 3, 2021. Doc. 89, Order, 1.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), parties may "seek reconsideration of interlocutory orders and . . . the district court [may] 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (second and third alterations in original) (quoting Fed. R. Civ. P. 54(b)). So long as the decision to be reconsidered is not a final judgment, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (citation omitted). A decision to deny a motion to dismiss is an interlocutory order to which the Rule 54(b) standard applies.[3] *See Austin*, 864 F.3d at 337; *Roberts v. Mnuchin*, 2017 WL 5147617, at *1 (W.D. Tex. Nov. 6, 2017) ("The Court construes Defendant's motion for reconsideration as a Rule 54(b) motion because it asks the Court to reconsider its refusal to dismiss Plaintiff's claims for lack of subject matter jurisdiction.").

## III.

## ANALYSIS

As a preliminary matter, the Court addresses the timeliness of Neat Print's motion to reconsider, which was filed upon the eve of trial, almost six weeks after the Memorandum Opinion and Order had issued, and was not based upon any intervening change in authority or new factual discovery. *See* Doc. 73, Mem. Op. & Order; Doc. 99, Mot. Recon. As the Court stated at the pretrial conference, the Court would usually consider such a motion untimely. However, because Neat

---

[3] Fed. R. Civ. P 59(c) applies to motions to reconsider "motions to alter or amend a final judgment." *Austin*, 864 F.3d at 336.

Print's motion challenges the Court's subject-matter jurisdiction to enter the Memorandum Opinion and Order granting-in-part summary judgment—and to hear the remaining issues at trial—the Court considered the motion on its merits. *See Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 639 (5th Cir. 2014), *aff'd*, 136 S. Ct. 2198 (2016) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action.").

Neat Print argues two reasons why the Court should reconsider its decision denying Neat Print's motion to dismiss for want of subject-matter jurisdiction and granting partial summary judgment. First, Neat Print argues that the Updated Covenant mooted Nursery Decals's claims by eliminating any future injury from the contested marks. Doc. 99, Mot. Recon., 4. Second, Neat Print argues that Nursery Decals's tortious interference claim is not a legally cognizable past injury and therefore cannot support standing. *Id.* at 5–8. The Court considers each argument in turn and affirms its prior determination that Nursery Decals has standing, despite the Updated Covenant.

A.   *Future Injury—The Updated Covenant Not to Sue*

Neat Print argues that its Updated Covenant Not to Sue, which added the words "takedown notice," eliminates any future harm to Nursery Decals from the contested marks. *Id.* at 4–5. In support of its position, Neat Print cites the Court's Memorandum Opinion and Order, which stated:

> Nor is it absolutely clear that [Neat Print's] Covenant Not to Sue would prevent Neat Print from filing future take-down notices based on the disputed trademarks. *See Already*, 568 U.S. at 93 (explaining that Nike had demonstrated "that the covenant encompasses all of its allegedly unlawful conduct"). A take-down notice presented to a third party distributor like Etsy might be a "claim" or "demand" within the meaning of the Covenant Not to Sue. *See* Doc. 54, Ex. 1-A, Covenant. But [Neat Print] has not unequivocally stated that the Covenant applies to take-down notices, nor does the Covenant itself include that term. *See id.* And as a four-justice concurrence noted in *Already*, the trademark holder—not the alleged infringer—must prove that the covenant not to sue is adequate to protect the alleged

> infringer's current and future products from enforcement action. *Already*, 568 U.S. at 104 (Kennedy, J., concurring).

*Id.* at 4 (quoting *Nursery Decals*, 2021 WL 4942192, at *7).

The Court agrees with Neat Print that the Updated Covenant, which now explicitly includes take-down notices and extends protection to Nursery Decals's customers, would "definitely eliminate[] Nursery Decals's . . . potential future injuries." *See Nursery Decals*, 2021 WL 4942192, at *7. However, if any legally cognizable injury remains, then Nursery Decals can maintain this action despite Neat Print's *Already* strategy. *See Already*, 568 U.S. at 93 (explaining that Already's claims were moot only because Nike had demonstrated "that the covenant encompasses *all* of its allegedly unlawful conduct" (emphasis added)). Therefore, the Court next considers whether Nursery Decals's claimed past harm—the tortious interference with prospective business relations claim—is legally cognizable.

B.  *Past Harm—Tortious Interference with Prospective Business Relationship*

Neat Print argues that "[a]ctionable fraud on the USPTO is a creation of federal and not state law," and that therefore Neat Print's alleged fraud on the USPTO—were a jury to find in Nursery Decals's favor on that issue—could not support a claim for tortious interference with prospective interference under Texas law. Doc. 99, Mot. Recon., 5. In support of this argument, Neat Print cites three cases, each decided by this Court's sister courts: *Gibson Brands, Inc., v. Armadillo Distribution Enterprises*, 2020 WL 3453164, at *4 (E.D. Tex. June 24, 2020); *PPD Enterprises, LLC v. Stryker Corporation*, 2017 WL 4950064, at *2–3 (S.D. Tex. Nov. 1, 2017); and *Aguirre v. Powerchute Sports, LLC*, 2011 WL 3359554, at *7 (W.D. Tex. Aug. 4, 2011). *Id.* at 5–8.

The Court agrees that these three cases indicate that fraud on the USPTO cannot generally

satisfy the independently tortious act element of a tortious interference claim. However, because the independently tortious act asserted in the present case is *not* the initial act of fraud on the USPTO, but is *a second act of fraud under Texas law* predicated upon the initial act of fraud on the USPTO—the sending of a take-down notice based upon a trademark registration *the sender knows to have been procured by fraud and therefore invalid*—these cases do not mean that Nursery Decals's tortious interference claim fails as a matter of law. Instead, its determination depends upon the resolution of disputed facts, including Neat Print's knowledge and intent at the time of application and the time of sending the take-down notice. Therefore, the injury is legally cognizable and Nursery Decals's case is not moot. *See Already*, 568 U.S. at 91 ("A case becomes moot . . . when . . . the parties lack a legally cognizable interest in the outcome.").

The Court begins its discussion of these cases with *Stryker*, which best explains why the three courts found as they did and why the issues and results in those cases are distinguishable from the facts presented here. In *Stryker*, a seller of medical devices sued a manufacturer of medical devices after the manufacturer terminated the seller's status as the exclusive sales representative for the products. 2017 WL 4950064, at *1. The seller claimed that the manufacturer "tort[i]ously interfered with [the plaintiff's] relationships with [a doctor and a hospital]," because the manufacturer's financial relationship with the doctor "violate[d] the Federal Anti-Kickback Statute and, by extension, the False Claims Act." *Id.* at *2. "Such violations, argue[d] [the plaintiff], satisfy the 'independently tortious or unlawful' element of its tortious interference claims." *Id.*

Because no Texas court had decided the issue of whether a violation of the Anti-Kickback Statute could satisfy the "independently tortious or unlawful act" requirement, the *Stryker* court

examined *Wal-Mart Stores Inc., v. Sturges*, in which the Texas Supreme Court established this requirement and discussed its meaning. *Id.* at *3 (quoting *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). The *Stryker* court noted that the Texas Supreme Court intended that claims for tortious interference with prospective business be limited to instances where the "'defendants' conduct was either independently tortious—in the four cases noted [by the *Sturges* court], defamatory or fraudulent—or in violation of *state* law." *Id.* (quoting *Sturges*, 52 S.W.3d at 726). Considering this language, the *Stryker* court concluded that "[e]xpanding the scope of potential liability under this tort to violations of federal law"—in this case, the False Claims Act—would contravene both the letter and the spirit of this holding by the Texas Supreme Court." *Id.*

Similarly, in *Aguirre* a court applying Texas law concluded that an alleged act of fraud on the USPTO in procuring a patent—a violation of federal law—was under most circumstances not an independently tortious act for purposes of the Texas tort. 2011 WL 3359554, at * 9 (discussing *Sturges*, 52 S.W.3d at 725). In so deciding, the *Aguirre* court emphasized that the *Sturges* court "referenced three relevant cases where the plaintiffs succeeded on a tortious interference claim based on a defendant's fraudulent statements" and that "in [each] . . . defendants made false representations regarding the respective plaintiffs." *Id.* Because the *Aguirre* plaintiff "d[id] not claim that the defendants made a false representation *about him*" to the USPTO, as would be required for him to plead fraud based on the act under Texas law, the allegedly-fraudulent patent application did not "satisfy the [independently tortious act] element of [his] tortious interference" claim. *See id.* (emphasis added). Instead, the allegedly fraudulent act must be legally cognizable fraud under Texas law to satisfy this element. *See id.* This is also the interpretation of the *Gibson Brands* court, which

Neat Print cites for the proposition that "[t]he tortious act must be a violation of a state law and not a federal law."[4] *See* Doc. 99, Mot. Recon., 5 (quoting *Gibson Brands*, 2020 WL 3359554, at *4 (citing *Stryker*, 2017 WL 4950064, at *3–4)).

In the present case, the Court's Memorandum Opinion & Order stated that:

> Nursery Decals has established a genuine issue of material fact as to whether Neat Print fraudulently obtained the four registrations. If a jury resolved this question in Nursery Decals['s] favor, finding that Mr. Raca did knowingly and fraudulently obtain the registrations, it could likewise reasonably find that Neat Print intentionally sent a take-down notice it knew to be fraudulently procured—arguably an independently tortious act. Therefore, the Court concludes that Neat Print has not established that this element fails as a matter of law.

*Nursery Decals*, 2021 WL 4942192, at *16.

The Court's decision in the Memorandum Opinion and Order is therefore consistent with that of the courts in *Gibson Brands*, *Aguirre*, and *Stryker*. As both the Memorandum Opinion and Order and the Court's subsequent Order issued after the pretrial conference state, the allegedly tortious act in this case is *the sending of a takedown notice that the sender knows to have been procured by fraud,* not the preceding act of fraud upon the USPTO. *See Nursery Decals*, 2021 WL 4942192,

---

[4] In *Gibson Brands*, a guitar manufacturer brought trademark infringement claims against a rival manufacturer which Gibson alleged was making copycat guitars. 2020 WL 3453164, at *1. The rival manufacturer asserted counterclaims for tortious interference with prospective business relationship and with existing business relationship under Texas law, based on letters Gibson had sent warning retailers not to sell the allegedly-infringing products. *Id.* Noting that "[i]n Texas, tortious interference with existing contracts qualifies as an independently tortious act of interference for the purposes of establishing interference with prospective business relationships." *Id.* at *4. Finding that the defendant had "adequately pleaded its tortious interference with existing contracts claim," the court declined to dismiss the interference with prospective contracts claim. *Id.* In the present case, the Court granted summary judgment for Neat Print on Nursery Decals's tortious interference with existing contract claims. *Nursery Decals*, 2021 WL 4942192, at *16.

at *16 (N.D. Tex. Oct. 22, 2021); Doc. 108, Order, ¶ 3(d) ("Defendant's fourth motion to exclude evidence and argument that Neat Print committed any independently tortious act as a predicate to Plaintiff's tortious interference claim is GRANTED IN PART and DENIED IN PART. Specifically, the parties *may* argue that submitting a takedown notice premised upon a trademark registration that is known to have been obtained by fraud is an independently tortious act."). If a jury found that Raca had scienter to commit fraud on the USPTO, the same jury might reasonably conclude that Raca still had the required scienter when he sent a take-down notice premised on the fraudulently registered marks to Etsy, intending to harm Nursery Decals—and that the sending of the notice itself was therefore a legally cognizable act of fraud, directed at Nursery Decals via Etsy, under Texas law.[5] *See Sturges*, 52 S.W.3d at 726 ("[T]he plaintiff must prove that the defendant's conduct would be actionable under a recognized tort. Thus, for example, a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded. If, on the other hand, the defendant's statements are not intended to deceive . . . then they are not actionable."); *c.f. Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (explaining that Texas law recognizes "that a fraud cause of action exists '[i]f the false representations be made with a view of reaching the third person to whom it is repeated, and for the purpose of influencing him'") (quoting *Gainesville*

---

[5] The Court also confirms its prior finding that Nursery Decals's damages did not fail as a matter of law, and that the amount of any such damages was a question of fact for the jury. While these methods may result in "uncertainty as to the amount" of the damages to which Nursery Decals would be entitled, there is not such "uncertainty as to the fact of legal damages" that this element is "fatal to recovery." *Nursery Decals*, 2021 WL 4942192, at *17 (citing *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 356 (5th Cir. 2021)).

*Nat'l Bank v. Bamberger*, 13 S.W. 959, 960–61 (Tex. 1890)).

Therefore, the Court correctly determined that Neat Print's Updated Covenant Not to Sue did not eliminate all Nursery Decals's legally cognizable injuries and that Nursery Decals's claims were not moot. *See Already*, 568 U.S. at 100 (explaining that Already's "only legally cognizable injury" was "the fact that Nike took steps to enforce its trademark" by sending a cease and desist letter and then filing an infringement suit). The Court confirms its finding that it had subject-matter jurisdiction to issue the prior Memorandum Opinion and Order granting-in-part and denying-in-part summary judgment and declines to reconsider any part of that Order.

## IV.

## CONCLUSION

For these reasons, and as stated on the record at the December 3, 2021, pretrial conference, the Court **DENIES** Neat Print's Motion for Reconsideration.

**SO ORDERED.**

**SIGNED: December 16, 2021.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE